### Mining Company *v.* Tarbet.

1. Under an act entitled "An Act granting the right of way to ditch and canal companies over the public lands, and for other purposes," approved July 26, 1866 (14 Stat. 251), as well as under that entitled "An Act to promote the development of the mining resources of the United States," approved May 10, 1872 (17 id. 91), the location of a mining claim upon a lode or vein of ore, should be made along the same lengthwise of the course of its apex at or near the surface. If otherwise laid, it will only secure so much of the lode or vein as it actually covers.

2. Each locator is entitled to follow the dip of the lode or vein to an indefinite depth, though it carries him beyond the side lines of the location; but this right is based on the hypothesis that they substantially correspond with the course of the lode or vein at the surface; and it is bounded at each end by the end lines of the location, crossing the lode or vein, and extended perpendicularly downwards, and indefinitely in their own direction.

3. A location laid crosswise of a lode or vein, so that its greatest length crosses the same instead of following the course thereof, will secure only so much of the vein as it actually crosses at the surface, and its side lines will become its end lines, for the purpose of defining the rights of the owners.

4. A locator working subterraneously into the dip of the vein belonging to another, who is in possession of his location, is a trespasser, and liable to an action for taking ore therefrom.

ERROR to the Supreme Court of the Territory of Utah.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. J. M. Woolworth* for the plaintiff in error, and by *Mr. Charles W. Bennett* for the defendant in error.

Mr. Justice Bradley delivered the opinion of the court.

This was an action in the nature of trespass *quare clausum fregit*, brought in the District Court of the Territory of Utah for the third district, by Alexander Tarbet, and continued by his assignee, Helen Tarbet, against the Flagstaff Silver Mining Company of Utah (limited), and other persons. The action having been dismissed as to the other persons, judgment was rendered for $45,000 damages upon the verdict of a jury against the company. The latter carried the case to the Supreme Court of the Territory, where the judgment was affirmed on the third day of June, 1878. The company thereupon sued out this writ of error.

The controversy relates to the working of a mine in Little

Cottonwood Mining District in the county of Salt Lake. The defendant in error claims to own, and to have been in possession of, a mining location on a lode called the Titus lode, the location including three claims, and extending six hundred feet westwardly from the discovery, with a width of two hundred feet, and including ten feet on the east side of the discovery belonging to the South Star mine. The plaintiff in error owned and had a patent for another mining location, called the Flagstaff mine, one hundred feet in width and two thousand six hundred feet in length, running in a northerly and southerly direction, and crossing the Titus claims near the west end thereof, and nearly at right angles therewith. In working from the Flagstaff mine the plaintiffs in error worked around subterraneously, to a point some three hundred feet to the east of their location, and on the north side of the Titus mine, and within about one hundred feet of the Titus location. It is for this working that the suit was brought; and the principal question is, whether the plaintiff in error had a right thus to work outside of its location on the east, and whether, in doing so, it interfered with the rights of the defendant in error.

It is conceded that both parties are working on the same lode or vein of ore. The Flagstaff discovery, to which the location of the plaintiff in error relates as its starting-point, is situated nearly due west from that of the South Star and Titus, and about five hundred and fifty feet therefrom. The lode crops out at the two points of discovery, but is not visible at intermediate points. These croppings, however, show that the direction or course of the apex of the vein, at or near the surface, is nearly east and west. The location of the Titus, claimed by the defendant in error, nearly corresponds with this surface course of the vein. The location of the Flagstaff, belonging to the plaintiff in error, crosses it nearly at right angles.

The principal difficulty in the case arises from the fact that the surface is not level, but rises up a mountain in going from the Titus discovery to the Flagstaff. The dip of the vein being northeasterly, it happens that, by following a level beneath the surface, the strike of the vein runs in a northwesterly direction, or about north 50° west. In other words, if by a process of abrasion the mountain could be ground down to a plain, the

strike of the vein would be northwest instead of west, as it now is on the surface ; or, at least, as the evidence tended to show that it is.   In that case, the location of the defendant in error would leave the vein to its right, and the location of the plaintiff in error would not reach it until several hundred feet to the north of the Flagstaff discovery.

Evidence having been given *pro* and *con* in reference to the condition and situation of the vein, both at and below the surface, and to the workings thereon by both parties, the judge charged the jury as follows : —

"If you find that Alexander Tarbet, during the time mentioned in the complaint, to wit, from Jan. 1, 1873, to Dec. 14, 1875 (being a period of 2 years, 11 months, and 14 days), was in possession of the whole or an undivided interest of Nos. 1, 2, and 3 of the Titus mining claim, and ten feet off No. 1 of the South Star mining claim, holding the same in accordance with the mining laws and the customs of the miners of the mining district, and that the apex and course of the vein in dispute is within such surface, — then, as against one subsequently entering, he is deemed to be possessed of the land within his boundaries to any depth, and also of the vein in the surface to any depth on its dip, though the vein in its dip downward passes the side line of the surface boundary and extends beneath other and adjoining lands, and a trespass upon such part of the vein on its dip, though beyond the side surface line, is unlawful to the same extent as a trespass on the vein inside of the surface boundary.   This possession of the vein outside of the surface line, on its dip, is limited in two ways, — by the length of the course of the vein within the surface; and by an extension of the end lines of the surface claim vertically, and in their own direction, so as to intersect the vein on its dip : and the right of a possessor to recover for trespass on the vein is subject to only these restrictions."

Again : " The defendant (plaintiff in error) has not shown any title or color of title to any part of the vein, except so much of its length on the course as lies within the Flagstaff surface, and the dip of the vein for that length ; and it has shown no title, or color of title, to any of the surface of the South Star and Titus mining claim, except to so much of No. 3

as lies within the patented surface of the Flagstaff mining claim."

The court refused to give the following instructions propounded by the plaintiff in error, to wit: "By the act of Congress of July 26, 1866, under which all these locations are claimed to have been made, it was the vein or lode of mineral that was located and claimed; the lode was the principal thing, and the surface area was a mere incident for the convenient working of the lode; the patent granted the lode, as such, irrespective of the surface area, which an applicant was not bound to claim; it was his convenience for working the lode that controlled his location of the surface area; and the patentee under that act takes a fee-simple title to the lode, to the full extent located and claimed under said act."

Secondly, "In the very nature of the thing, a lode or vein in its unworked and undeveloped stage cannot be known and surveyed so as to plat it and make a diagram of it; the law does not require impossibilities, and must receive a reasonable construction. The diagram required to be filed by the applicant for a patent under the act of 1866 was a diagram of the surface area claimed; and this diagram might be extended laterally and otherwise, as convenience in working this claim might suggest to the applicant."

These instructions and refusals to instruct indicate the general position taken by the court below; namely, that a mining claim secures only so much of a lode or vein as it covers along the course of the apex of the vein on or near the surface, no matter how far the location may extend in another direction.

The plaintiff in error has made the following assignment of error, which indicates the position which it contends for:—

"The plaintiff in error assigns for error the charge of the court and the refusal to give its requests, that is, that the judge instructed the jury that the defendant below had shown no title or color of title to any part of the vein except so much of its length on its course as lies within the surface ground patented; and that he refused to direct the jury that by the act of Congress it was the vein or lode of mineral that was located and claimed, and that the patent granted the lode irrespective of the surface area, which was merely for the convenience of

working the lode; that the diagram required to be filed by an applicant for a patent was of the surface claimed, and might be extended laterally or otherwise, as convenience in working the claim might suggest; that the surface ground patented does not measure the grantee's right to the vein or lode in its course, or control the direction which he shall take; and, lastly, that the Flagstaff company have the right to the lode for the length thereof claimed in the location notice, though it runs in a different direction from that in which it was supposed to run at the time of the location."

Both parties agree in the general rule that the owner of a mining right in a lode or vein cannot follow the course of the vein beyond the end lines of his location extended perpendicularly downwards, but that he may follow the dip to an indefinite distance outside of his side lines. This is undoubtedly the general rule of miners' law, and the true construction of the act of Congress. The language of the act of 1866 (14 Stat. 251) in relation to "a vein or lode" is, "that no location hereafter made shall exceed two hundred feet in length *along the vein* for each locator, with an additional claim for discovery to the discoverer of the lode, with the right to follow such vein *to any depth*, with *all its dips, variations, and angles*, together with a reasonable quantity of surface for the convenient working of the same as fixed by the local rules," &c. The act of 1872 (17 id. 91) is more explicit in its terms; but the intent is undoubtedly the same, as it respects end lines and side lines, and the right to follow the dip outside of the latter. We think that the intent of both statutes is, that mining locations on lodes or veins shall be made thereon lengthwise, in the general direction of such veins or lodes on the surface of the earth where they are discoverable; and that the end lines are to cross the lode and extend perpendicularly downwards, and to be continued in their own direction either way horizontally; and that the right to follow the dip outside of the side lines is based on the hypothesis that the direction of these lines corresponds substantially with the course of the lode or vein at its apex on or near the surface. It was not the intent of the law to allow a person to make his location crosswise of a vein so that the side lines shall cross it, and thereby give him the right

to follow the strike of the vein outside of his side lines.   That would subvert the whole system sought to be established by the law.   If he does locate his claim in that way, his rights must be subordinated to the rights of those who have properly located on the lode.   Their right to follow the dip outside of their side lines cannot be interfered with by him.   His right to the lode only extends to so much of the lode as his claim covers.   If he has located crosswise of the lode, and his claim is only one hundred feet wide, that one hundred feet is all he has a right to.   This we consider to be the law as to locations on lodes or veins.

The location of the plaintiff in error is thus laid across the Titus lode, that is to say, across the course of its apex at or near the surface ; and the side lines of the location are really the end lines of the claim, considering the direction or course of the lode at the surface.

As the law stands, we think that the right to follow the dip of the vein is bounded by the end lines of the claim, properly so called ; which lines are those which are crosswise of the general course of the vein on the surface.   The Spanish mining law confined the owner of a mine to perpendicular lines on every side, but gave him greater or less width according to the dip of the vein.   See Rockwell, pp. 56–58, and pp. 274, 275.   But our laws have attempted to establish a rule by which each claim shall be so many feet of the vein, lengthwise of its course, to any depth below the surface, although laterally its inclination shall carry it ever so far from a perpendicular.   This rule the court below strove to carry out, and all its rulings seem to have been in accordance with it.

The plaintiff in error contended, and requested the court to charge, in effect, that having received a patent for two thousand six hundred feet in length and one hundred feet in breadth, commencing at the Flagstaff discovery, on the lode at the surface, it was entitled to two thousand six hundred feet of that lode along its length, although it diverged from the location of the claim, and went off in another direction.   We cannot think that this is the intent of the law.   It would lead to inextricable confusion.   Other localities correctly laid upon the lode, and coming up to that of the plaintiff in error on

either side, would, by such a rule, be subverted and swept away. Slight deviations of the outcropping lode from the location of the claim would probably not affect the right of the locator to appropriate the continuous vein; but if it should make a material departure from his location, and run off in a different direction, and not return to it, it certainly could not be said that the location was on that lode or vein farther than it continued substantially to correspond with it. Of what use would a location be, for any purpose of defining the rights of parties, if it could be thus made to cover a lode or vein which runs entirely away from it. Though it should happen that the locator, by sinking shafts to a considerable depth, might strike the same vein on its subterranean descent, he ought not to interfere with those who, having properly located along the vein, are pursuing their right to follow the dip in a regular way. So far as he can work upon it, and not interfere with their right, he might probably do so; but no farther. And this consequence would follow irrespective of the priority of the locations. It would depend on the question as to what part of the vein the respective locations properly cover and appropriate.

We do not mean to say that a vein must necessarily crop out upon the surface, in order that locations may be properly laid upon it. If it lies entirely beneath the surface, and the course of its apex can be ascertained by sinking shafts at different points, such shafts may be adopted as indicating the position and course of the vein; and locations may be properly made on the surface above it, so as to secure a right to the vein beneath. But where the vein does crop out along the surface, or is so slightly covered by foreign matter that the course of its apex can be ascertained by ordinary surface exploration, we think that the act of Congress requires that this course should be substantially followed in laying claims and locations upon it. Perhaps the law is not so perfect in this regard as it might be; perhaps the true course of a vein should correspond with its strike, or the line of a level run through it; but this can rarely be ascertained until considerable work has been done, and after claims and locations have become fixed. The most practicable rule is to regard the course of the vein as that which is indicated by surface outcrop, or surface explorations

and workings. It is on this line that claims will naturally be laid, whatever be the character of the surface, whether level or inclined.

If these views are correct, the Titus claims, belonging to the defendant in error, were located along the vein or lode in question in a proper manner; and the Flagstaff claims, belonging to the plaintiff in error, were located across it, and can only give the latter a right to so much of the vein or lode as is included between their side lines. The court below took substantially this view of the subject, and ruled accordingly.

As this is really the whole controversy in the case, it is unnecessary to examine more minutely the different points of the charge, or the instructions asked for by the plaintiff in error. The question was presented in different forms, but all to the same general purport.

*Judgment affirmed.*