## IRON SILVER MINING COMPANY *v.* ELGIN MINING & SMELTING COMPANY & Others.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Argued March 26, 29, 1886.—Decided April 26, 1886.

Under sections 2320, 2322, and 2324 of the Revised Statutes, the surface side lines of a mining location on a mineral vein, lode, or ledge, extended downward vertically, determine the extent of the claim, except when, in its descent, the vein passes outside of such surface side lines, and then the outside portions of the vein must lie between vertical planes drawn downward through the end lines of the surface location and continued in their own direction; and the parallelism of such end lines is essential to the existence of any right in the locator to follow the vein outside of vertical planes drawn through the side lines.

This was an action to recover possession of certain mining ground in Lake County, Colorado. The plaintiffs in the court below, the defendants in error here, asserted title to the premises under a patent of the United States for what was known as the " Gilt Edge Claim," of which they were a part. In the original complaint they asserted title by conveyance from the

original locators. A patent to them having been subsequently granted, they filed an amended complaint setting up its issue, and that it conveyed to them a fee simple title.

The complaint averred that the defendant, the Iron Silver Mining Company, on the 25th of June, 1882, by means of drifts inclines and tunnels, entered without right upon a portion of the Gilt Edge claim, which it had since wrongfully withheld from the plaintiffs to their damage of $50,000; and that it had excavated, carried away, and converted to its own use, since such entry, gold, silver, and lead ores belonging to them, of the value of $50,000. They, therefore, prayed judgment for the premises and damages for their wrongful detention, and for the ores taken.

The defendant in its answer denied the several allegations of the complaint, and set up as an affirmative defence that, under a patent of the United States, bearing date May 24, 1877, it was the owner in fee, and entitled to the possession of a surface lode mining claim also situated in Lake County, Colorado, called the "Stone Claim," containing nine acres and $\frac{18}{100}$ of an acre of land, more or less, and of a vein, lode, or ledge therein, extending the length of the claim from north to south 1500 feet throughout its entire depth, although it entered adjoining lands; that the vein, lode, or ledge contained iron, lead, and silver in large quantities; that the top apex and outcrop of it were found in the surface claim throughout its entire extent; that its true strike was north and south, with a dip to the east at an angle of fifteen degrees below the plane of the horizon; that the vein, lode, or ledge on its dip, within vertical planes drawn downward, with its end lines continued in their own direction, that is, in the direction of the dip, passed through and beyond the east vertical side line of the surface claim and location into and under the Gilt Edge surface claim. And the defendant admitted that underneath the surface of the Gilt Edge claim it had followed and mined upon the Stone vein, lode, or ledge, and averred that, by reason of the facts above set forth, it had the right so to do, and denied that it had otherwise interfered with the Gilt Edge claim or any part of it.

The plaintiffs in their reply denied the material allegations of the answer. By stipulation the case was tried by the court without the intervention of a jury. On the trial the plaintiffs produced in evidence a patent of the United States to them for the Gilt Edge claim, in the usual form of patents for lode mining claims, and the defendant admitted that they were invested with the title to the property which the patent conveyed; that it had entered underneath the surface of that claim at a point east of the Stone surface claim; and was engaged in mining and in carrying away lead and silver ores when the action was commenced.

It was agreed that plat "A" [see page 199] correctly represented the shape and relative positions of the Gilt Edge mining claim and of the Stone mining claim, and that the lines on the figures of the Stone claim, from No. 5 to 6 and from 1 to 14, were the two end lines of the surface claim, so called by the locator thereof, and in the plat accompanying the application for the patent.

It was also agreed that plat "B" [see page 200] was a correct copy of the plat of the Gilt Edge claim contained in the patent thereof, which also showed its relative position to the Stone claim, the latter being marked Sur. No. 217.

And thereupon the plaintiffs rested. The defendant then introduced in evidence a patent for the Stone claim, bearing date May 24, 1877, issued to one Alvinus B. Wood; and it was admitted that, by divers mesne conveyances, the defendant held title in fee to the premises described in it.

The patent gave a full and minute description by metes and bounds of the surface claim, containing nine acres and $\frac{18}{100}$ of an acre of land, more or less, and embracing 1500 linear feet of the Stone lode along the course thereof. Its granting clause was as follows:

"Now, know ye that the United States of America, in consideration of the premises and in conformity with the said Revised Statutes of the United States, have given and granted, and by these presents do give and grant, unto the said Alvinus B. Wood, and to his heirs and assigns, the said mining premises hereinbefore described as lot No. 217, embracing a portion

*Plat "A".*

Scale, 200 Feet=1 Inch.

of the unsurveyed public domain, with the exclusive right of possession and enjoyment of all the land included within the exterior lines of said survey not herein expressly excepted from these presents, and of fifteen hundred (1500) linear feet of the said Stone vein, lode, ledge, or deposit, for the length hereinbefore described, throughout its entire depth, although it may enter the land adjoining, and also of all other veins, lodes, ledges, or deposits, throughout their entire depth, the tops or apexes

of which lie inside the exterior lines of said survey at the surface extended downward vertically, although such veins, lodes, ledges, or deposits, in their downward course, may so far depart from a perpendicular as to extend outside the vertical side lines of said survey: *Provided,* That the right of possession hereby granted to such outside parts of said veins, lodes, ledges, or deposits, shall be confined to such portions thereof as lie between vertical planes drawn downward *through the end lines of said survey at the surface,* so continued in their own direction that such vertical planes will intersect such exterior parts of said veins, lodes, ledges, or deposits: *And provided further,* That nothing in this conveyance shall authorize the grantee herein, his heirs or assigns, to enter upon the surface of a mining claim owned or possessed by another: To have and to hold said mining premises, together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature, thereunto belonging, unto the said Alvinus B. Wood, and to his heirs and assigns, forever, subject, nevertheless, to the following conditions and stipulations:

" First. That the grant hereby made is restricted to the land hereinbefore described as lot No. 217, with fifteen hundred (1500) linear feet of the Stone vein, lode, ledge, or deposit for the length aforesaid, throughout its entire depth as aforesaid, together with all other veins, lodes, ledges, or deposits, throughout their entire depths as aforesaid, the tops or apexes of which lie inside the exterior lines of said survey.

" Second. That the premises hereby conveyed, with the exception of the surface, may be entered by the proprietor of any other vein, lode, ledge, or deposit, the top or apex of which lies outside the exterior limits of said survey, should the same in its downward course be found to penetrate, intersect, extend into, or underlie the premises hereby granted, for the purpose of extracting and removing the ore from such other vein, lode, ledge, or deposit.

" Third. That the premises hereby conveyed shall be held subject to any vested and accrued water-rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water-

rights as may be recognized and acknowledged by the local laws, customs, and decisions of courts.

" Fourth. That in the absence of necessary legislation by Congress the legislature of Colorado may provide rules for working the mining claim or premises hereby granted, involving easements, drainage, and other necessary means to its complete development."

The defendant then offered to prove—

(1) That the Stone vein, lode, or ledge mentioned in the patent was a vein, lode, or ledge of rock in place bearing iron, lead, and silver in large quantities, and was valuable on account thereof.

(2) That the top, apex, and outcrop of the vein, lode, or ledge existed, and were found in the Stone surface claim through its entire extent from north to south, between walls of rock in place, a limestone foot wall, and a porphyry hanging wall.

(3) That the true strike of the vein, lode, or ledge was north and south, and had a dip to the east at an angle of 15° below the plane of the horizon.

(4) That the vein, lode, or ledge, on its dip within vertical planes drawn downward through the end lines of the vein, lode, or ledge, so existing and found within the Stone surface mining claim, and continued in their own direction, viz., in the direction of the dip of the vein, lode, or ledge, passed through, out of, and beyond the east vertical side line of the Stone surface claim and location into lands adjoining, to wit, into and under the said Gilt Edge surface claim.

(5) That while the defendant admitted that underneath the surface of the Gilt Edge surface claim it had followed and mined in and upon the Stone vein, lode, or ledge, by reason of the facts and premises above set forth, it had a right so to do, and that it had not otherwise in any way interfered with said Gilt Edge claim, or any part thereof.

To which plaintiffs objected, on the ground that the proffered proof would not be a defence to the action nor tend to establish a defence thereto, and that by reason of the surface form or shape of the Stone claim its owners had no right under the laws of the United States or otherwise to follow the lode

alleged to exist therein in its downward course beyond the lines of the claim and into plaintiffs' claim; and that no part of the Gilt Edge claim or the mineral or lode within it was within vertical planes drawn downward through the end lines of the Stone claim and continued indefinitely in their own direction.

The court sustained the objection and excluded the evidence offered, to which ruling the defendant excepted.

The following diagram, showing the shape of the Stone claim, its exterior lines, its center line, and the line of the apex of the vein, as alleged by the defendant, was also put in evidence:

Scale, 200 feet = 1 inch

Another diagram of the Stone claim was introduced in evidence, but as it was similar to the one above, with the exception of the lines showing the course of the apex, the direction of the strike and the dip of the vein, it is not important to exhibit it in this statement.

No other evidence was offered. The court found the issues for the plaintiffs, and judgment was entered in their favor, to review which the case was brought here.

*Mr. Walter H. Smith* and *Mr. G. G. Symes* for plaintiff in error.

*Mr. T. M. Patterson*, with whom was *Mr. C. S. Thomas* on the brief, for defendants in error.

MR. JUSTICE FIELD, after stating the case as above reported, delivered the opinion of the court:

The question presented for our decision is one of great interest to miners on the public lands, and with respect to it much difference of opinion exists. This difference has arisen from a consideration, on the one hand, of what would properly be called the true end lines of a claim upon a lode of a specified length and width, after it has been opened by explorations, and its general course and direction are seen; and a consideration, on the other hand, of the statute requiring the location of a claim to be distinctly marked on the ground, so that its boundaries may be readily traced. Such location often precedes any extended explorations, and is, therefore, made without accurate knowledge of the course and direction of the vein. When a vein has been discovered the rules of miners, and the legislative regulations of mining States and Territories, generally allow some specified time for explorations before the location is definitely marked. But miners discovering a lode are sometimes in such haste to locate their claim, and mark its extent and boundaries on the surface, that they omit to make sufficient explorations to guide them aright in measuring the ground and fixing its end lines. Hence efforts are not infrequently made to change those lines when the true course and

direction of the vein are ascertained by subsequent developments.

The framers of the statute of 1872 evidently proceeded upon the theory that a claim on a lode, following its outcroppings on the surface for the distance allowed, with a definite extension on each side of the middle of the vein, would generally take the form of a parallelogram. It provided that the length of a claim, subsequently located, whether by one or more persons, should not exceed fifteen hundred feet; that its extension on each side of the middle of the vein at the surface should not exceed three hundred feet; and that its end lines should be parallel to each other. Rev. Stat. § 2320. A section of the lode within vertical planes drawn downward through the lines marked on the surface was designed as the grant to the original locator; but, as the vein in its downward course might deviate from a perpendicular and pass out of the side lines, the right was conferred to follow it outside of them, but within planes through the end lines drawn vertically downward, and continued in their own direction. The language of that statute, as carried into the Revised Statutes, is as follows:

"The locators of all mining locations heretofore made, or which shall hereafter be made, on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns, where no adverse claim exists on the tenth day of May, eighteen hundred and seventy-two, so long as they comply with the laws of the United States, and with State, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges, throughout the entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward, as above described, through the end

lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges. And nothing in this section shall authorize the locator or possessor of a vein or lode which extends in its downward course beyond the vertical lines of his claim to enter upon the surface of a claim owned or possessed by another." Rev. Stat. § 2322.

This section appears sufficiently clear on its face. There is no patent or latent ambiguity in it. The locators have the exclusive right of possession and enjoyment of "all the surface included within the lines of their locations," and the location, by another section, must be distinctly marked on the ground so that its boundaries can be readily traced. Rev. Stat. § 2324. They have also the exclusive right of possession and enjoyment " of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of said surface locations." The surface side lines extended downward vertically determine the extent of the claim, except when in its descent the vein passes outside of them, and the outside portions are to lie between vertical planes drawn downward through the end lines. This means the end lines of the surface location, for all locations are measured on the surface.

The difficulty arising from the section grows out of its application to claims where the course of the vein is so variant from a straight line that the end lines of the surface location are not parallel, or, if so, are not at a right-angle to the course of the vein. This difficulty must often occur where the lines of the surface location are made to control the direction of the vertical planes. The remedy must be found, until the statute is changed, in carefully making the location, and in postponing the marking of its boundaries until explorations can be made to ascertain, as near as possible, the course and direction of the vein. In Colorado the statute allows for this purpose sixty days after notice of the discovery of the lode. Then the location must be distinctly marked on the ground, and thirty days

thereafter are given for the preparation of the proper certificate of location to be recorded. *Erhardt* v. *Boaro*, 113 U. S. 527, 533. Even then, with all the care possible, the end lines marked on the surface will often vary greatly from a right-angle to the true course of the vein. But whatever inconvenience or hardship may thus happen, it is better that the boundary planes should be definitely determined by the lines of the surface location, than that they should be subject to perpetual readjustment according to subterranean developments made by mine workings. Such readjustment at every discovery of a change in the course of the vein would create great uncertainty in titles to mining claims. The rule, whatever hardship it may work in particular cases, should be settled, and thus prevent, as far as practicable, such uncertainty.

If the first locator will not or cannot make the explorations necessary to ascertain the true course of the vein, and draws his end lines ignorantly, he must bear the consequences. He can only assert a lateral right to so much of his vein as lies between vertical planes drawn through those lines. Junior locators will not be prejudiced thereby, though subsequent explorations may show that he erred in his location.

The provision of the statute, that the locator is entitled throughout their entire depth to all the veins, lodes, or ledges, the top or apex of which lies inside of the surface lines of his location, tends strongly to show that the end lines marked on the ground must control. It often happens that the top or apex of more that one vein lies within such surface lines, and the veins may have different courses and dips, yet his right to follow them outside of the side-lines of the location must be bounded by planes drawn vertically through the same end lines. The planes of the end lines cannot be drawn at a right angle to the courses of all the veins if they are not identical.

It is also a fact of importance, that the Land Department has, since the act of 1872, followed the end lines as marked on the surface, and has limited the extra lateral right of patentees by vertical planes drawn down through such end lines; as in the patent to Wood in this case. Any decision that the de-

partment erred in that respect, and that the rights of the patentees were different, would disturb titles derived from such patents, and lead to great confusion and litigation. If it is expedient to change the rule, legislative action should be invoked, as it would operate only in the future; and not judicial decision which would affect past cases as well.

This view of the controlling effect of the end lines of the surface location is also sustained by the decision of this court in the Flagstaff case. *Mining Co.* v. *Tarbet*, 98 U. S., 463, 470. There the court said that " the most practicable rule is to regard the course of the vein as that which is indicated by surface outcrop, or surface explorations and workings," and that " it is on this line that claims will naturally be laid, whatever be the character of the surface, whether level or inclined," and that the end lines of the claim, properly so called, " are those which are crosswise of the general course of the vein *on the surface.*" The court suggested that the law might be imperfect in this respect, and that perhaps the true course of the vein should correspond with its strike or the line of a level run through it; but it added that this " can rarely be ascertained until considerable work has been done, and after claims and locations have become fixed."

Under the act of 1866, 14 Stat., 251, parallelism in the end lines of a surface location was not required, but where a location has been made since the act of 1872, such parallelism is essential to the existence of any right in the locator or patentee to follow his vein outside of the vertical planes drawn through the side lines. His lateral right by the statute is confined to such portion of the vein as lies between such planes drawn through the end lines and extended in their own direction, that is, between parallel vertical planes. It can embrace no other portion.

The exterior lines of the Stone claim form a curved figure somewhat in the shape of a horseshoe, and its end lines are not and cannot be made parallel. What are marked on the plat as end lines are not such. The one between numbers 5 and 6 is a side line. The draughtsman or surveyor seems to have hit upon two parallel lines of his nine-sided figure, and ap-

parently for no other reason than their parallelism called them end lines.

We are, therefore, of opinion that the objection that, by reason of the surface form of the Stone claim, the defendant could not follow the lode existing therein in its downward course beyond the lines of the claim, was well taken to the offered proof. Besides, if the lines marked as end lines on the plat of that claim can be regarded as such lines of the location, no part of the Gilt Edge claim falls within vertical planes drawn down through those lines continued in their own direction. In either view of the location of the Stone claim, the rejected proof would have established no defence. The premises in controversy are admitted to be under the surface lines of the Gilt Edge claim eastward from the defendant's claim, and the plaintiffs were therefore entitled to recover them.

*Judgment affirmed.*

Mr. Chief Justice Waite, with whom concurred Mr. Justice Bradley, dissenting.

I cannot agree to this judgment. In my opinion the end lines of a mining location are to be projected parallel to each other and crosswise of the general course of the vein within the surface limits of the location, and whenever the top or apex of the vein is found within the surface lines extended vertically downwards, the vein may be followed outside of the vertical side lines. The end lines are not necessarily those which are marked on the map as such, but they may be projected at the extreme points where the apex leaves the location as marked on the surface.

Mr. Justice Gray did not hear the argument nor take any part in the decision of this case.