DEL MONTE MINING & MILLING CO. v. NEW YORK & L. C. MIN. CO.

(Circuit Court, D. Colorado. March 13, 1895.)

No. 3,127.

1. MINES AND MINING—RIGHT TO FOLLOW DIP—OVERLAPPING LOCATIONS.
   A controversy arising from overlapping locations, after being carried on both .before the land office and the courts, was compromised by allowing one of the locations to patent most of the disputed land. A company was then organized, representing both parties to the dispute, and the land was conveyed to it. *Held*, that this company could not refer its title to either or both of the contending locations, at its election, so as to give it the right to follow the dip within the end lines of either location at will, but, on the contrary, it must derive its rights in this respect solely from the location under which the patent was obtained.

2. SAME—VEIN PASSING THROUGH SIDE LINE.
   The fact that the apex of a vein, on its strike, passes through one end line and one side line of the location, does not cause both of these lines to be regarded as end lines, so as to destroy the parallelism, without which there is no right to follow the dip laterally beyond the boundaries of the claim. On the contrary, the owner of such a claim will have a right to follow the dip, within his own original end lines, so far as he holds the outcrop within his location.

This was a bill by the Del Monte Mining & Milling Company to enjoin the New York & Last Chance Mining Company from working within complainant's claim.

Thomas, Hartzell, Bryant & Lee and H. G. Lunt, for complainant. Wolcott & Vaile, for respondent.

HALLETT, District Judge. Complainant seeks to enjoin work on a mine called "Del Monte," situate in Sunnyside mining district, Mineral county. The mine is on Bachelor Mountain, near the crest thereof, and the location follows the general course of the crest from north to south. Respondent's property is adjacent, and somewhat below complainant's claim on the side of the mountain. The relative position of the claims is shown in the accompanying diagram much better than can be explained otherwise.

The diagram shows also the apex of 'the vein as claimed by respondent. But it should be observed that this marks only the foot wall of the lode, and the position of the hanging wall is the subject of much controversy in the suit.

Respondent's territory is within the lines marked "North Compromise Line" and "South Compromise Line." Respondent holds this territory under the New York and Last Chance locations, which are shown on the diagram. Each party holds by patent, and there is no dispute as to surface lines. Respondent, claiming to have the apex and outcrop of the lode within its territory, asserts the right to follow the lode on its dip beneath the surface of the Del Monte location. Complainant's position is that respondent has no extralateral right—First, because it has not the whole of the vein within its territory, the hanging wall being within the Del Monte territory. Upon this proposition the testimony is highly conflicting, and of a character to be submitted to a jury, with a view to ascertain the fact; but it is not regarded as sufficient to

establish the fact. In the present inquiry the outcrop of the lode will be taken to be within respondent's territory, and on the line of the foot wall as shown on the diagram.

The second point against respondent's claim of extralateral right is that the outcrop of the lode does not follow the New York location from end to end, but passes out of the east side of the claim near the north end, as shown on the diagram. Respondent admits that the main lode has this course and direction, but it also maintains that one fork of the lode, leaving the main lode at or near the point of divergence, continues through the north end of the claim and across the north end line, at or near the Pittsburgh shaft. The proof of this condition is no more satisfactory than that which relates to the width of the lode. While there is some evidence as to the existence and extent of a branch or fork of the lode at the northern end of the

claim, which may be proper for the consideration of a jury, I am compelled to say that the fact is not established; so that, for the purpose of deciding the motion now under consideration, we must take the line of outcrop to be as marked on the diagram, and extending from the south end line of the New York location to a point some 280 feet south of the northeast corner, where it diverges into the Last Chance location.

So understood, the question is whether respondent can follow the lode on its dip outside its own territory, and within the lines of the Del Monte claim, extended down vertically. Some years back, and before patents were obtained, these locations were held by different owners, between whom a controversy arose as to the ownership of the territory common to both locations. Upon the application of the owners of one of the claims for patent, the owners of the other claim made adverse claim in the land office,

pursuant to the act of congress governing such matters. Thereupon the controversy was renewed in court, and was there pending for a considerable time without trial or judgment. The parties then came to an agreement by which the New York location was allowed to patent the greater part of the territory in dispute, as indicated on the diagram, and the New York & Last Chance Mining Company, respondent in this suit, was organized to represent the parties respectively, and the ground in dispute was conveyed to respondent in settlement of the controversy. A title so arising may, it is said, be referred to one or the other or both of the contending locations, and respondent may follow the end lines of one or the other location in its election. This, however, cannot be accepted. As respondent's territory was patented under the New York location, the lines of that location must control all questions of ownership. The controversy prior to patent is of no weight whatever as to any right arising under the patent for one claim or the other. If the strike of the lode in the New York location kept its course from end to end of the location, the right to follow the lode outside the location would not be denied. As, however, it departs on its strike from the location on the east side, and not from the north end, it is said that the claim has no end lines, or, at all events, none that can be recognized as limiting the right to any part of the vein outside of the exterior lines of the claim. This is asserted as a proposition of law deducible from several decisions of the supreme court that the lines of a location crossed by the apex of a vein on its strike shall, as to such vein, be regarded as end lines, whatever their position may be; and, if this proposition be accepted, the south end line and east side line, intersected by the outcrop of this lode, are not parallel to each other, as demanded by section 2320 of the Revised Statutes. This, however, has not been the interpretation of the law in the supreme court, or in any court, so far as we are advised. It is true that in the Flagstaff Case, 98 U. S. 463, and recently in the Amy-Silversmith Case, 152 U. S. 223, 14 Sup. Ct. 510, the supreme court declared that the side lines of a location shall be end lines whenever the lode, on its strike, crosses such lines; but these decisions do not affirm that all lines of a location crossed by a lode on its strike shall be end lines. The most that can be deduced from them is that opposite lines, parallel to each other, when crossed by the lode, shall be end lines. The case presented is not within the principle of these decisions. We have a lode extending on its strike on the general course of the location, and within its side lines, a distance of 1,070 feet. It is conceded that the south end line of the location is well placed, and all parts of the lode covered by the location are within the end lines as fixed by the locator. The difficulty arises from the circumstance that the location extends in a northerly direction about 280 feet beyond the point where the lode diverges from the side line. No reason is perceived for saying that this mistake in the length of the location should defeat the right to follow the vein on its dip outside the location. It is said that we cannot make a new end line at the point of divergence or elsewhere, because the court cannot make

a new location, or in any way change that made by the parties. Iron Silver Min. Co. v. Elgin Mining & Smelting Co., 118 U. S. 196, 6 Sup. Ct. 1177. This, however, is not necessary. We can keep within the end lines fixed by the locator in respect to any extralateral right that may be recognized without drawing any line; and, if there be magic in the word "line," it will be better not to use it.

In this instance, as in most controversies between adjacent owners, it is necessary to ascertain what part of the lode is within the New York location, and this, according to the map, appears to be 1,070 feet. At all points on the dip of the lode into the mountain westwardly we can ascertain the length of the lode within the end lines by measuring the same distance from the south end line produced. In this proceeding there is no departure from the end lines of the New York location as fixed by the locator, and there is no new line of location drawn for any purpose whatever. We keep entirely within the end lines of the location as required by the statute, and the circumstance that we are somewhat short of the north end line does not in any way affect the principle to be followed in construing the statute. The same rule would be adopted if the lode were physically shorter than the location. Let it be assumed that upon a lode of the length of 1,000 feet (which is not an extraordinary occurrence) a location shall be made of the length of 1,500 feet, extending 250 feet in each direction beyond the ends of the lode. Would any one deny the right of the locator to follow the lode within his end lines, upon the ground that the lode did not come to either of such lines? I think not. The case is not different when the lode intersects one end line and not the other, but keeps within the location for a considerable distance. In that case, as in the accepted case of a lode traversing the location from end to end, the locator ought to be allowed to follow his lode into adjoining territory, so far as he may within his end lines, and so far as he holds the outcrop in his location. Upon this construction of the statute respondent is entitled to so much of the lode upon its dip as lies between the south compromise line and the point of divergence of the apex of the vein from the New York location. This point, as nearly as can be determined at this time, is 1,070 feet from the southeast corner, or, proceeding in the other direction, 280 feet from the northeast corner. Following the course of the end lines of the New York location in a westerly direction from this point, there is a considerable space, which widens in the westward course between the line last mentioned and the north compromise line. To this respondent is not entitled, as against complainant, the owner of the Del Monte claim. So much of the territory last mentioned as lies west of the east side line of the Del Monte location is subject to the prayer of the complainant's bill. The engineers will be able to state the boundaries in detail, and an order may be entered allowing the injunction as to that part. As to the territory south of that last mentioned, the motion will be denied.