CATRON v. OLD ET AL.

1. MINING CLAIMS—LATERAL RIGHTS.

When the strike of a vein is parallel with the side lines of the claim, the owner of the apex has the right to follow the vein downward in its dip to any depth, although in so doing he passes beyond the side lines of his claim as located upon the surface into adjoining territory, but it is otherwise when the strike of the vein is across the side lines.

2. SAME—DEPARTURE OF VEIN.

In the circumstances disclosed in this case, the owner of a mining claim the vein of which enters a side line of the claim and departs at the same side, has no extralateral rights.

*Appeal from the District Court of Clear Creek County.*

THIS is an action for possession and damages to real property, instituted by Benjamin C. Catron, as plaintiff, against Robert O. Old and Ellen Old, defendants. The trial in the court below resulted in a verdict and judgment for the defendants. Plaintiff appeals.

Mr. A. D. BULLIS and Messrs. MORRISON & DE SOTO, for appellant.

Mr. E. H. PARK and Mr. JACOB FILLIUS, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

Upon the facts which are conceded a single question of law is raised. The point in controversy may be clearly un-

derstood from the map and diagram on the next page. The plaintiff is the owner of the Smuggler mining claim, survey lot No. 7373. Defendants are the owners of the Fulton and Mendota mining claims, survey lots No. 70 and 834. All the claims are patented, and there is no question of surface rights. The dotted line on the map shows the apex of the vein through the claims. This vein, which has been explored extensively in workings upon both the Mendota and Fulton claims, dips to the south beneath the surface of the Smuggler claim. In following the vein upon its dip, the defendants passed beyond the side line of the Fulton claim, and are working beneath the surface boundaries of the Smuggler claim at a point marked "A" upon the map.

The question presented is as to whether the vein at "A" belongs to the owners of the Fulton or to the plaintiff by reason of his ownership of the Smuggler claim. The plaintiff's right is based upon his ownership of the surface, upon the common law principle that the owner of the surface owns all above and all beneath. The defendants claim by reason of the apex of the vein being within their surface boundaries. It is claimed that the common law doctrine is changed by section 2322 of the Revised Statutes of the United States, which provides, *inter alia*, that the owners of the surface shall be entitled to all veins, lodes or ledges throughout their entire depth, where the top or apex of such vein lies within the surface lines of the claim extended vertically downward, although such veins, lodes or ledges may, in their downward course, so far depart from a perpendicular as to extend outside the side lines of such surface location, such lateral rights to be confined to such portions as lie between vertical planes drawn downward through the end lines of the location. The question is thus sharply defined: The plaintiff claims that, by reason of the strike of the vein in the Fulton location, the defendants have no extralateral rights whatever, while the defendants claim that they have such rights, and are, by reason thereof, entitled to the vein in its downward course, through the Smuggler territory.

Questions upon the law of the apex under the United States statutes are receiving much attention from mining communities and from the courts. At one time it was quite generally conceded that the owner of the apex might follow the vein upon its dip under all circumstances, but decisions of the supreme court of the United States in recent years have been contrary to such generally accepted doctrine.

In *Mining Co. v. Tarbet*, 98 U. S. 463, it was held that a location laid across a vein, so that its greatest length crosses the same instead of following the course, would secure only so much of the vein as it actually crosses at the surface. In speaking of the right to follow veins upon the dip, the court said, in reference to the intent of the statute:

" We think that the intent of both statutes is, that mining locations on lodes or veins shall be made thereon lengthwise, in the general direction of such veins or lodes on the surface of the earth where they are discoverable; and that the end lines are to cross the lode and extend perpendicularly downwards, and to be continued in their own direction either way horizontally; and that the right to follow the dip outside of the side lines is based on the hypothesis that the direction of these lines corresponds substantially with the course of the lode or vein at its apex on or near the surface. It was not the intent of the law to allow a person to make his location crosswise of a vein so that the side lines shall cross it, and thereby give him the right to follow the strike of the vein outside of his side lines. That would subvert the whole system sought to be established by the law."

After this decision was rendered it was still thought that the owner of the apex had a right to follow the vein on its dip beyond the side lines, although the vein crossed both side lines, and although the end lines were to be treated as side lines, and the side lines as end lines. The question again came before the supreme court in the case of *The Iron Silver Mining Co. v. Elgin Mining & Smelting Co. et al.*, 118 U. S. 196, which was a contest between the owners of the " Stone claim," located in the shape of a horseshoe, and an

adjoining claim, and it was held that as the end lines of the Stone claim as located upon the surface were not parallel, the owners had no extralateral rights and were not permitted to follow the lode in its downward course beyond the side lines of the claim.

The question next came before that court in the case of *Argentine Mining Co. v. Terrible Mining Co.*, 122 U. S. 478, where it was again held that when the claim upon the surface crosses the vein, instead of being along the same, as provided by statute, the end lines of the claim became the side lines, and the side lines became the end lines, and that the apex rights must be determined accordingly.

Notwithstanding the vein in its strike across the country passed across the side lines instead of running parallel with them, the opinion had become so firmly fixed that these decisions did not entirely overthrow it, but in the subsequent case of *King v. Amy & Silversmith Mining Co.*, 152 U. S. 222, the language of the court left no ground for dispute. In that case it was first definitely and authoritatively determined that when a vein crossed both side lines of a claim, instead of running in a direction parallel thereto, the owner of the surface had no apex rights that would allow him to follow the vein in its dip beyond a vertical plane drawn downward from the surface boundaries of the claim.

This last decision was followed in the more recent case of *Last Chance Mining Co. v. Tyler Mining Co.*, 157 U. S. 683. Therefore, it may now be said that the rule is well established in cases other than horizontal veins, if the vein in its strike across the country is parallel to the side lines of a claim, the owner of the apex has the right to follow the vein to any depth in its dip beneath the surface, although in so doing he passes beyond the side lines of his claim into adjoining territory; and it is equally as well settled that when the strike of the vein is across the side lines of a claim, no extraterritorial rights are acquired by reason of the ownership of the apex. But there are other important questions of the law of the apex which have not at this writing been

passed upon by the supreme court of the United States.  In the case just cited it is said, as to one of such questions: " There has been no decision as to what extraterritorial rights exist if a vein enters at an end and passes out at a side line ; " and, it may be added, that in no case has that court directly decided the question before us in the case at bar, where the vein upon its strike enters the claim by crossing one side line and leaves the claim at the same side.

It is claimed by appellant that the facts in this case are so nearly similar to the facts in the case of *King v. Amy & Silversmith Mining Company, supra,* that the decision in that case against the right of the apex owner is controlling here.  There is, however, a marked difference between the two cases, as will be seen by a comparison of the diagram in this case with the one to be found in the opinion in that case.

Perhaps the case at bar more closely resembles the claim set up by the owners of the Stone claim, and passed upon in the case of *Iron Silver Mining Co. v. Elgin Mining & Smelting Co., supra,* the Stone claim being located in the shape of a horseshoe, and the location in this case being similar, although the ends of the appellees' claim are at a greater distance apart, the claim being in the form of an obtuse angle. The latest expressions of the United States supreme court upon the subject seem to indicate that the location upon the surface must substantially cover the vein, although a somewhat different construction has been put upon these cases by some of the circuit courts of the United States, and by the circuit court of appeals of the ninth circuit.  In the case of *Last Chance Mining Co. v. The Tyler Mining Co.,* 61 Fed. Rep. 557, the comparative direction of the vein was thought by the court to be controlling, and in that case it was said to be a question of fact as to whether or not the vein extended more along than across the claim.

The doctrine of *Last Chance Mining Co. v. Tyler Mining Co.* was followed in the case of *Consolidated Wyoming Gold Mining Co. v. Champion Mining Co.,* 63 Fed. Rep. 540, the opinion in both cases having been written by the same judge. In the latter case it is said :

"One general principle should pervade and control the various conditions found to exist in different locations, and its guiding star should be to preserve in all cases the essential right given by the statute to follow the lode upon its dip, as well as upon the strike, to so much thereof as its apex is found within the surface lines of the location. If the lode runs more nearly parallel with the end lines than with the side lines, as marked on the ground as such, then the end lines of the location must be considered by the courts as the side lines meant by the statute. If the lode runs more nearly parallel with the side lines than the end lines, then the end lines, as marked on the ground, are considered by the court as the end lines of the location. In both cases the extralateral rights are preserved and maintained, as defined in the statute."

In both cases the learned judge proceeds upon the doctrine of comparative direction of the lode, and it was left to the jury, as a question of fact, whether or not the vein extends more along than across the claim. The obvious objection to this doctrine is, that it introduces a feature of uncertainty into mining titles, which should be avoided, if possible. Moreover, it is in irreconcilable conflict with the decisions of the supreme court of the United States in the *Amy & Silversmith Case, supra.* An examination of the plat accompanying and made a part of that decision shows that the court denied extralateral rights to a vien which, in fact, runs "more along than across" the location upon the surface.

In the case of *Montana Co. v. Clark et al.,* 42 Fed. Rep. 626, it was held that where a claim is in the form of an isosceles triangle, the owner cannot follow the lode or vein upon the dip through the side lines of the claim into another claim. This case followed the *Iron Silver Mining Co. v. Elgin Mining & Smelting Co. Case, supra,* and proceeded upon the theory that to the exercise of the right to follow the vein upon its dip, the end lines must be parallel.

With the exception of the *Wyoming-Champion Case,* these cases were all decided before the decision in the *Amy &*

*Silversmith Case, supra,* was announced, which case, as we have stated, contains the first direct and positive declaration upon the subject by the supreme court of the United States. There has been one decision rendered upon the question since by the district judge of this district. In *Del Monte Mining & Milling Co. v. New York and Last Chance Mining Co.,* 66 Fed. Rep. 212, a question was presented as to apex rights between the New York claim and the Del Monte claim, the New York being higher up the mountain than the Del Monte, and holding the apex. Explorations had disclosed that the New York vein, in its general course, had within its side lines the apex for a distance of 1,070 feet. As the vein entered one end line of the New York claim, the only difficulty found by the district judge grew out of the fact that it departed from the side lines of the claim about 280 feet from the end line opposite the place of entrance, the claim being less than the full length allowed by statute. In these circumstances, upon a preliminary application, the learned district judge held that the owners of the New York were entitled by reason of their apex rights to follow the vein in its downward course through the side lines of the claim, and beneath the surface boundaries of the Del Monte location.

While there are some expressions in the opinion which would seem to be in favor of the contention of appellees in this case, if the facts are not considered, yet when it is remembered that the vein entered one end line of the New York claim and extended more than 1,000 feet in a general direction parallel to the side lines of the claim, it would seem that the decision is hardly in point in this case.

In the recent case of *The Argonaut Consolidated Mining Co. v. Turner et al., ante,* p. 400, this court held that where a vein passed through an end line of a claim and extended, as far as disclosed (this being for a considerable distance) in a general direction parallel to the side lines of the location, the lower court was justified in giving the claim extralateral rights, there being no evidence to show that the vein departed from the side lines of the location at any point, the pre-

sumption being that the vein continued regularly upon its course.

In the case at bar, no part of the Fulton vein runs parallel or nearly parallel with the side lines of that claim, as staked upon the surface. The United States supreme court has said that if the locator of a mining claim mistakes the direction of his vein, and locates accordingly, the courts have no power to make a new location for him, but must determine his rights with reference to the location actually made. *King v. Amy & Silversmith Co., supra.* Developments made subsequent to the location of the Fulton disclose that the claim as located contains very little of the apex of the vein, and such as it does contain does not cross either end line, and does not run parallel or nearly parallel to the side lines; so that, in no aspect of the law can the Fulton be allowed extralateral rights by reason of the apex of the vein. The judgment of the district court must accordingly be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*