[No. 4359.]

THE AJAX GOLD MINING COMPANY v. HILKEY ET AL.

1. Mines and Mining—Veins—Apexing Within Surface Boundaries—Extra Lateral Rights.

The owner of a patented lode mining claim has extra lateral rights in all veins apexing within the surface boundaries of his claim and may follow such veins on their dip outside the surface lines to the extent that such veins apex within the boundary lines. And this right as applied to other than the discovery vein is not limited to veins apexing in the same segment of the claim in which the apex of the discovery vein exists.

2. Same.

Where the apex of the discovery vein of a mining claim entered the claim at the south end line and running in a course nearly parallel with the claim passed out through the east side line one thousand feet north of the south end line, and the apex of a second vein entered through the west side line near the north end line and passed diagonally through the claim leaving it through the east side line, the owner's extra lateral rights in the second vein were not limited to that part of the vein apexing in the south one thousand feet of the claim, but is measured by

the planes of lines extended downward vertically parallel to the end lines, one passing through the point where the vein entered and the other where it passed out through the side lines.

*Appeal from the District Court of Teller County.*

Messrs. COLBURN & DUDLEY and Mr. J. C. HELM, for appellant.

Mr. W. O. TEMPLE and Mr. S. D. CRUMP, for appellees.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This is an action by the owner of the Victor Consolidated, against the owner of the Triumph, mining claim, to recover for the value of ores taken from a vein within the limits of the Triumph lode, of which both parties assert ownership. The defendants say the ores belong to them because the vein from which they were extracted is within the outer boundaries of their location, while plaintiff's ownership is based upon an apex right under section 2322, Revised Statutes of the United States. Only one important question is raised by the appeal of the apex claimant, who failed below, and this arises out of the following instruction given to the jury at the instance of the defendants:

"If you believe, from the evidence in this case, that the discovery lode of the Victor Consolidated claim passes out of either side line of that claim before reaching the northerly end line of said claim, as originally located, then the rights of the plaintiff to any ore outside the surface boundaries of said claim in any vein having its apex within such claim are limited to two parallel bounding planes, one drawn through the southerly end line of said Victor Consolidated claim as originally located, and the other pass-

ing through the said claim parallel to said southerly
end line at the point where such discovery vein may
have been shown to depart from its side lines, if such
departure has been shown.''·

Both parties agree that by it the jury were, in
effect, told that if the discovery vein of a lode mining
claim on its strike departs through a side line, no
extra lateral rights attach to any other vein apexing
within the claim beyond the point of such departure.

The question thus presented seems not to have
been expressly determined by the supreme court of
the United States or any of the inferior federal or
state courts.   In the absence of any decision at all
construing the act of congress, we would not have
much, if any, doubt as to its meaning.   Its language is
broad enough to sustain appellant's contention that
the owner of a lode mining claim has extra lateral
rights in and to all veins the top or apex of which lies
within its surface lines extending downward verti-
cally, to the extent, at least, of the length of the apex
within such boundaries, even though the discovery
vein on its strike does not cross both end lines.   For
the statute provides that owners of such claims:
''Shall have the exclusive right of possession and en-
joyment of all the surface included within the lines of
their locations and of all veins, lodes and ledges
throughout their entire depth, the top or apex of
which lies inside of such surface lines extended down-
ward vertically, although such veins, lodes or ledges,
may so far depart from a perpendicular in their
course downward as to extend outside the vertical
side lines of such surface locations.''

The only express limitation to this comprehen-
sive grant is found in the proviso of the same section,
which declares that the right of possession to such
outside parts of veins ''shall be confined to such
portions thereof as lie between vertical planes drawn

downward as aforesaid, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of said veins or ledges.''

There does not seem to be anything ambiguous or uncertain in this language, and, indeed, appellees' counsel are disposed to concede that, taken literally, it affords some warrant, at least, for appellant's position; but they say that by numerous decisions construing the statute the courts have enunciated several propositions that somewhat restrict its apparent scope. Appellees' position cannot be better presented than in the language of their learned counsel, and a statement of their propositions serves to bring out sharply the respective contentions so ably argued on both sides. The following map will also aid in an understanding of the controversy.

The apex of the discovery vein of the Victor Consolidated is represented by b,b'. It enters the claim at the south end line, and its course in the main runs parallel with the claim as surveyed, but passes out through the east side line about 1,000 feet from the south end line. a,a' is the vein which, as contradistinguished from the discovery vein, we call the secondary vein, which the evidence tended to show passes diagonally across the location, entering it through the west, and leaving it through the east, side line. The Triumph claim is correctly delineated on the map. If the ore taken from the underground workings of the Triumph was taken from any vein apexing within the Victor Consolidated, as some of the evidence tended to show, it was from this so-called secondary vein. Stating the contention again, in a concrete form, the jury were told if the discovery vein of the Victor Consolidated crossed the east side line at c', then the rights of the plaintiff to ore outside of its surface boundaries in any vein having its apex therein is limited to two parallel bounding planes, one drawn through the south end line 1,4 of the location, as originally established, and the other passing through the claim at the point where the discovery vein leaves the east end line and parallel to the south end line at c,c'. The north end line, or bounding plane, of this right is the dotted line c,c', and the south bounding plane the south end line of the location 1,4. Plaintiff's extra lateral rights as to all veins within the surface lines were, by this instruction, restricted to that part of the claim south of the line c,c', and in that part between this line and the north end line of the claim he was given none whatever, though about 500 feet of the apex of the secondary vein was found in this latter segment.

The three propositions of law said to be established by the decisions, of which the fourth one stated

by appellees is said to be a necessary corollary, are:

1.   There can be but one set of end lines or bounding planes for a single location, and these limit the extra lateral right upon all lodes or veins apexing therein.

2.   These end lines or bounding planes are determined by the strike of the discovery vein with reference to the located side and end lines of the claim.

3.   Where the apex of the discovery vein passes through one end and one side line the extra lateral right upon such vein will be bounded by a vertical plane drawn downward through the crossed end line and another vertical plane parallel thereto, but operating at the point where the apex leaves the side line.

The fourth proposition they thus express: "The necessary logical sequence of these propositions is, that where the discovery vein on its strike departs through a side line, no extra lateral rights attach to any other vein apexing within the claim beyond the point of such departure."

Since appellant concedes the first three propositions, there is no necessity for discussing them or citing the authorities upon which they rest.   But the alleged deduction therefrom appellant vigorously combats, and that presents the question for our decision.   We first observe that that part of appellees argument to the effect that where a location is laid across, instead of along, the discovery vein, the end lines become the side lines of the location, and the side lines become the end lines, is not pertinent to anything now before us, and in so far as the deduction depends on such proposition, it is without support.   There is no dispute between counsel as to this doctrine of shifting of side and end lines, in the case supposed, but it is wholly inapplicable here, for the Victor Consolidated location is laid *along* the course

of the discovery vein, and this vein enters the claim through the south end line, and passes out under the east side line. Besides this, the location is patented, and there is authority for saying that its end lines, as chosen by the locator and described by the patent, are, for all purposes and under all circumstances, to be taken as the fixed end lines.

.But conceding the correctness of all three propositions, as to which the counsel upon both sides are in accord, we cannot agree with learned counsel for appellees in their ingenious argument that the fourth proposition, which they must establish in order to sustain the instruction complained of, is a logical sequence of either, or all, of the others. It is quite true that there can be but one set of end lines for one location, and these must perform that function not only for the discovery vein but for all other veins apexing within the surface lines.—*Del Monte M. & M. Co. v. Last Chance M. & M. Co.*, 171 U. S. 55; *Walrath v. Champion Mining Co.*, 171 U. S. 293, 297, 308.

This, however, does not mean that all such veins have exactly the same extra lateral rights, nor can it be said that only so much of a secondary vein as apexes within that part of the claim where the apex of the discovery vein is found has such rights. In the Walrath case, *supra,* which was twice before the circuit court of appeals (63 Fed. 552; 72 Fed. 978) and once before the supreme court of the United States, there are some expressions in the opinions of the circuit court of appeals from which, taken alone, it might be inferred that under facts like those here present, the owner of a claim would have extra lateral rights in the discovery vein even beyond the point where, on its strike, it leaves the side line, and that the bounding planes, within which such rights are to be exercised, must be drawn through the two end

lines. But appellant makes no such contention here, and is content with extra lateral rights in the discovery vein only up to the point of its departure from the east side line, so that, for our present argument, we assume that to be the true doctrine.

The end lines constitute a barrier beyond which a locator cannot follow a vein on its strike, whether it be a discovery or secondary vein, and they also limit the bounding planes within which his extra lateral rights are to be exercised in following such vein on its dip. In exercising such extra lateral rights the locator cannot, in any case, pursue the vein on its dip beyond the bounding planes drawn through the end lines, but, as we have said, appellant is content to be restricted in the exercise of such rights in the secondary vein to planes drawn parallel to the end lines and passing, the one through the claim at the point where the vein enters, and the other where it departs from, the surface line of the location. The extent of the right depends upon the length of the apex, and the extra lateral rights are measured not necessarily by the end lines—and only so when the vein passes across both end lines—but by bounding planes drawn parallel to the end lines passing through the claim at the points where it enters into, and departs from, the same.

It would seem, therefore, necessarily to follow that the extra lateral right depends, *inter alia,* upon the extent of the apex within the surface lines, and while the end lines of the claim as fixed by the location are the end lines of all veins apexing within its exterior boundaries, the planes which bound such rights of different veins may be as different as the extent of their respective apices, though all such planes must be drawn vertically downwards parallel with the end lines. It makes no difference in what portion of the patented claim the apex is. Its extra

lateral rights under this rule can easily be ascertained. The apex of a secondary vein need not be in the same portion of the claim as is the apex of the discovery vein. The statute does not say so. The decisions heretofore made certainly do not so require. The three propositions deduced from these decisions do not logically lead to that doctrine. While, as we have said, there is no decision upon the exact point, yet we think there are cases, in addition to those already cited, which necessarily lead to this conclusion, among which are *Cons. Wyoming G. M. Co. v. Champion M. Co.,* 63 Fed. 540, 546. While this court, in Catron v. Old, 23 Colo. 433, criticised this case, it did not do so as to the point now under consideration. It was with reference to the doctrine of comparative direction of the lode which left to the jury, as a question of fact, whether a vein extends more along, than across, the claim, that the criticism went; and we there said this introduced an element of uncertainty which, if possible, should be avoided.

See, also: *Fitzgerald v. Clark,* 17 Mont. 100, affirmed by the United States supreme court, 171 U. S. 92; *Tyler M. Co. v. Last Chance M. Co.,* 71 Fed. 848; 2 Lindley on Mines, § 591 *et seq.*

The language of Judge Hallett, when *Del Monte M. & M. Co. v. N. Y. & L. C. M. Co.,* 66 Fed. 212, was before him, is pertinent to the argument of appellees that there can be but one set of end lines or bounding planes for all the veins covered by a single location, and that they must be the same for each. He thus disposes of it:

"It is said that we cannot make a new end line at the point of divergence or elsewhere, because the court cannot make a new location, or in any way change that made by the parties. *Iron Silver Min. Co. v. Elgin Min. & Smelting Co.,* 118 U. S. 196, 6 Sup. Ct. 1177. This, however, is not necessary. We

can keep within the end lines fixed by the locator in respect to any extra lateral right that may be recognized without drawing any line; and, if there be magic in the word 'line,' it will be better not to use it.''

The opinion of Mr. Justice Brewer, when the same case came before the federal supreme court (171 U. S. 55), is very instructive, and, as we read it, is authority for the conclusion which we have reached in the case in hand. In speaking of extra lateral rights of a vein entering a claim through an end line and passing out under a side line, he said: ''Given a vein whose apex is within his surface limits, he can pursue that vein as far as he pleases in its downward course outside the vertical side lines.'' And referring to the proviso of section 2322, which we have hereinabove quoted, he proceeds: ''This places a limit on the length of the vein beyond which he may not go, but it does not say that he shall not go outside the vertical side lines unless the vein in its course reaches the vertical planes of the end lines. * * * Naming limits, beyond which a grant does not go, is not equivalent to saying that nothing is granted which does not extend to those limits. The locator is given a right to pursue any vein, whose apex is within his surface limits, on its dip outside the vertical side lines, but may not, in such pursuit, go beyond the vertical end lines. And this is all that the statute provides.''

This reasoning applies as much to a secondary, as to the discovery, vein. It is a vein that apexes within the surface limits, and there is, to say the least, no more reason in denying to it extra lateral rights, because it does not apex within that particular part of the claim where the apex of the discovery vein is, than there is for denying to any vein extra lateral rights unless in its course it reaches the

vertical planes of the end lines. Justice Brewer says this latter condition is not essential to the exercise of extra lateral rights, and *a fortiori,* the former is not.

Our conclusion is that for all veins, both discovery and secondary, of a patented claim, the owner has extra lateral rights, at least for so much thereof as apex within the surface lines; that such rights as to secondary veins are not confined to such veins as apex within the same segment of the claim in which the apex of the discovery vein exists; and while the end lines of the location, as fixed and described in the patent, are the end lines of all veins apexing within the surface boundaries, and may constitute the bounding planes for such extra lateral rights, and in no case can the locator pursue the vein on its dip outside the surface lines beyond such planes continued in their own direction until they intersect such veins, yet these bounding planes, which in all cases must be drawn parallel to the end lines, need not be coincident. The giving of this instruction was prejudicial error. The judgment is, therefore, reversed and the cause remanded.

*Reversed.*