## Case No. 8,158.

### LEADVILLE CO. v. FITZGERALD et al.

### STEVENS et al. v. MURPHY et al.

[4 Morr. Min. Rep. 380; Carp. Min. Code, 73.]

Circuit Court, D. Colorado. 1879.

MINES AND MINING — LODES AND VEINS —"ROCK IN PLACE"—RIGHT TO FOLLOW DIP—CONTINUITY OF VEIN—PRESUMPTIONS.

[1. "Rock in place," as used in Rev. St. 2320, means that the lode or vein must be inclosed by the fixed and immovable rock forming the general mass of the mountain. There must, therefore, be a hanging as well as a foot wall; but, if the principal part of the rock above the mineral is in its original position, the lode is in place, although some masses of rock or boulders may be mixed with the ore. If, however, the ore is upon the top

of the immovable rock, and covered only by loose material and debris, the section does not apply.]

[See Stevens v. Williams, Case No. 13,414.]

[2. There can be no right, under this section, to follow the vein outside the surface lines, unless the vein can be traced continuously from one claim to the other. If the mineral is not continuous, then it must be ascertained whether there are continuous boundaries inclosing the vein.]

[3. A vein or lode does not come within this section if it lies horizontally, but if it departs from a horizontal position at all the degree of departure is immaterial.]

[4. There is a presumption of ownership in favor of every locator as to the territory covered by his location, and within his own lines he is to be regarded as the owner of all valuable deposits until some one else shall show, by a preponderance of testimony, that such deposits belong to another lode, having its apex elsewhere.]

[Cited in Consolidated Wyoming Gold-Min. Co. v. Champion Min. Co., 63 Fed. 551.]

[These were suits by the Leadville Mining Company against Fitzgerald and others, and by Stevens & Leiter against Murphy and others, to enjoin defendants from taking ore from within the limits of complainants' claim, and to recover damages for ore already taken. Applications have been made in each case for an injunction.]

Hugh Butler, T. M. Patterson, C. S. Thomas, and E. O. Wolcott, for plaintiffs.

J. B. Belford, J. D. Ward, and James Y. Marshall, for defendants.

HALLETT, District Judge. These cases are so far similar that what is said in respect to one may be taken to be applicable to both of them. Until the discovery of mineral deposits near Leadville, no controversy had arisen in this state as to whether a lode or vein is in place within the meaning of the act of congress. The mines opened in Clear Creek, Gilpin, Boulder and other countries, descend into the earth so directly that no question could arise as to whether they were inclosed in the general mass of the country. Whatever the character of the vein, and whatever its width, it was sure to be within the general mass of the mountain; but the Leadville deposits were found to be of a different character. In some of them, at least, the ore was found on the surface, or covered only by the superficial mass of slide, debris, detritus, or movable stuff, which is distinguishable from the general mass of the mountain, while others were found beneath an overlying mass of fixed and immovable rock, which could be called a wall as well as that which was found below them. It then became necessary to consider very carefully the meaning of the words, "in place," in the act of congress, in order to determine whether these deposits were of the character described in that act. Section 2320, Rev. St., refers to veins and lodes in "rock in place," and of course no other can be brought within the terms of the act. After careful consideration, it was thought that a vein or lode could not be

in place, within the meaning of the act, unless it should be within the general mass of this mountain. It must be inclosed by, or held within, the general mass of fixed and immovable rock. It is not enough to find the vein or lode lying on the top of fixed or immovable rock, for that which is top is not within, and that which is without the rock in place cannot be said to be within it. This conclusion was reached in the application by the owners of the New Discovery claim against the owners of the Little Chief claim. The same idea was advanced in the trial before a jury in which the ownership of the Iron mine was involved. The attention of the jury was especially directed to that matter, and they were directed to inquire upon the evidence, whether the lode was inclosed within the general mass of country rock,—in other words, whether there was a hanging as well as a foot wall; and the jury ascertained and determined that the lode was so inclosed in the general mass of the mountain. To apply this principle in the present cases, we are led to inquire whether the veins or lodes are so inclosed in the general mass of the mountain, or lie only on the surface of the fixed and immovable rock, with no other covering than the superficial mass to which reference has been made.

In the first of these cases, in which the Leadville Mining Company is plaintiff, it seems that in the plaintiff's own ground the lode is well enough defined. There, there is an overlying mass of country rock which may be called a hanging wall; but when we come to the ground in dispute, which is claimed by the defendants, and is called by them the Little Giant claim, the testimony is not satisfactory on that point. Only one of the witnesses for plaintiffs has examined the shaft sunk by defendants, and although he testifies that the valuable ore at the bottom of the shaft is found between walls, his testimony is overborne by numerous witnesses on behalf of defendants. In all the affidavits filed by defendants, which are very numerous, it is stated that the shaft sunk by the defendants penetrated only loose material, and that nothing like solid or fixed and immovable rock was found in its course. In this state of the evidence, it is almost undisputed that what is called a lode or vein at the point in controversy is not within the general mass of country rock. Whatever its character may be to the eastward from that point, if at the very place in controversy the upper or hanging wall cannot be found, it cannot be called a lode, within the meaning of the act. These deposits are very irregular, and, if for any considerable distance they come to the surface and pass out from the rock in place, they cease to be lodes within the meaning of the act. At all events, the rule must be so as to one who seeks to pursue them beyond the side lines of his claim. To establish a right of

that kind, he must be able to show that the lode is continuous and in place throughout its whole course from its origin in his own ground to the place in which he claims it. In this respect the showing was very different in the case to which reference was made by counsel between the owners of the Bull's Eye and the Silver Ware claims. In that case many witnesses testified that the vein was continuous and in place throughout its course between the two claims. There may have been some opposing testimony, but it was a contested point, and the testimony went strongly to show that the vein was continuous as alleged in the bill of complaint. But here the fact that the lode at the point in dispute is upon the top of the rock in place and covered only by loose material and debris, is almost undisputed. Upon that ground, it is thought that no injunction can be allowed. The plaintiffs must show that the vein is in place and that it extends continuously from their ground and into that claimed by the defendants, before they can be entitled to such relief.

In the other case the question presented is not the same. It is not denied that there is at the place in controversy an overlying mass of country rock, but defendants allege that within the limits of the Iron claim and eastward from that point in the openings made by plaintiffs, there is no continuous vein or lode; that in that territory there are only irregular deposits, having no connection with each other. The plaintiffs, on the other hand, contend that there is, in all the ground opened by them, a continuous vein or lode, which may be traced throughout all their workings. The point is strongly contested on both sides. Many affidavits have been filed by each party to establish the fact, and it seems to be a question which should be submitted to a jury. Upon principles heretofore announced, we may interfere by injunction to preserve the property pending the controversy. If, as in the other case, it was clearly shown that the fact is as alleged by defendants, the plaintiffs could not be entitled to such relief; but as they have made a strong showing as to the regularity and continuous course of the vein, it is proper to preserve the property until the result of the trial shall be known.

As to what was said by counsel with reference to the position of the vein or lode, I am still of the opinion that, if it descends from the plane of the horizon, it is to be regarded as a departure from the perpendicular. It is conceded that if the vein be exactly upon the plane of the horizon, it is not within the act. In every position, however, from the horizontal to the perpendicular, it must be said that it has departed from the perpendicular. And here, if the evidence is to be believed, the lode is somewhat below the plane of the horizon, and so within the meaning of the act, as one which may be pursued beyond the side lines of the

claim in which its outcrop may be found. In the first case the injunction will be denied, and in the second the motion will be allowed.

In the case of the Leadville Company, the plaintiffs took leave to amend their bill, and in the other case the defendants took leave to amend their cross bill. Both cases were afterward tried by jury.

[The charge of HALLETT, District Judge, in the case against Fitzgerald, is as follows:]

HALLETT, District Judge (charging jury). You have learned, gentlemen, from the evidence, that there is no controversy between these parties as to the surface of their several locations. The plaintiff claims to own the Carbonate location, as laid down upon the maps, and defendants claim to be the owners of the Little Giant claim, or to the surface of those locations. It may be assumed, for the purposes of this controversy, that each party is the owner of their own location, as claimed by them. The controversy relates to ground which is reached by a subterraneous course from the plaintiffs' ground, and in which they claim that it is their lode, originating in their territorial lines, and they claim to have followed this lode from their own ground into that of defendants', in pursuance of the act of congress which gives them, as they say, that right. This act of congress provides, whenever a location shall be made upon a lode, according to local law, the locator shall be entitled to the surface ground to a certain extent on each side of the top or apex of the lode, and that he shall have, not only that lode, but all others which have their tops and apexes in the same territory,—that is, in the ground covered by his location,—and he shall have these lodes in such a way that he may follow their dip or inclination to any depth to which they may extend. It has sometimes been contended that the lode must have a certain position in the earth,— that is to say, it must be more or less vertical,—before this rule, which is given in the act of congress, can be applied; but we have heretofore held, and are still of the opinion, that it applies to all lodes which have an inclination below the plane of the horizon, whatever it may be; that is to say, whether the lode stands at an angle of twenty, thirty, forty, seventy, or eighty degrees, that it is still within the terms of the act of congress. If it be a lode, and one that may be followed, with such boundaries as to enable the locator to identify it beyond his own territory, that, whatever its inclination may be below the horizon, that he may follow it. So that, to state the point so it may be applied to the present case, the inclination of the lode, if it should be, for instance, twenty or twenty-five degrees below the horizon, it is the same as if it were more; if it originated in the plaintiff's

ground, and extends into that beyond, the territory of the defendants, the plaintiff is entitled to it, although it may have no greater inclination than twenty or twenty-five degrees. Having stated to you that the controversy relates to the lode beneath the surface, as extended from the territory of the plaintiff's claim into that of the defendants, I have written here what I regard as the practical questions for your consideration, as well as directions regarding these questions. As a starting point in the evidence before you, the fact appears to be established that large quantities of valuable ore have been found in the Carbonate claim. This may be taken to show that a lode exists in that locality in so far as the question relates to the boundaries of that claim; that is to say, if the question for present consideration related to the ownership of the ore within the surface limits of the Carbonate claim, it would not be necessary to consider very carefully the position of the ore in the earth, because within the lines of each location the owner shall be regarded as having full right to all that may be found, until some one can show a clear title to it as part of some lode or vein having its top or apex in another territory. To state the proposition in other words, we may say that there is a presumption of ownership in every locator to the territory covered by his location, and within his own lines he shall be regarded as the owner of all valuable deposits until some one shall show, by a preponderance of testimony, that such deposits belong to another lode, having its top or apex elsewhere. If, however, it is not important to examine the situation of the ore within the lines of the location, with reference to the question of ownership, it may be of some value to consider that subject for the purpose of ascertaining whether there is a lode in that ground extending thence eastward into adjoining territory. Upon that point it may be said that the mineral must be in place, within definite boundaries; that it must be practically continuous from the plaintiff's ground into defendants' ground; and that the top and apex of the lode must be in plaintiff's ground. As to the first question, if the lode is in the general mass of the mountain, as distinguished from the slide, debris, or "tumble stuff" of the surface, it is in place, within the meaning of the act of congress. If the rock above the lode is in its original position, although somewhat broken and shattered by the movement of the country, or other causes, it is in place. And in this kind of deposits it may be said that the lode is in place whenever the rock above is in place. The concurrence of detached masses of rock, whether called boulders or by some other name, and whether they are of lime or other formation, in proximity to the ore, is not, in itself, conclusive evidence that the overlying mass of rock is not in place. That fact, if it is a

fact, may tend to prove that some or all of the overlying mass is of the same character. But if there is evidence to show that the overlying mass is not the same, but of original structure, the concurrence of boulders or detached masses of rock with the ore is not significant. If the principal part of the rock above the mineral is in its original position, according to the present structure of the mountain, the lode is in place, although some masses of rock or boulders may be associated with the ore.

Upon another question, the same circumstance, if it is proven, may be of some weight, and that question is, as to the boundaries of the lode. If the ore is found in general, within boundaries of porphyry and lime, although some fragments of each may occur with it, the lode is well defined. If, however, the ore occurs in porphyry and lime, or in both, or either, in such confused and irregular way as shows no line of demarcation for the ore body, the lode is not so defined as that it may be followed beyond the lines of plaintiff's location. The physical structure of the earth at and within the ground in controversy, and immediately west of the dividing line between the claims in plaintiff's ground, is to be considered in that view. If it is broken up and jumbled in such a way that from plaintiff's ground over the line and beyond, through defendants' workings, it seems to be unreasonable to say that there are boundaries of porphyry and lime to the mineral body, the plaintiff cannot recover. If there are such boundaries, the evidence is sufficient on that point. Intimately connected with this is the second question before suggested, whether the lode is practically continuous from plaintiff's ground into defendants' ground. Of course, if there is a continuous and unbroken sheet or body of ore extending from one claim into the other, there can be little doubt as to the boundaries, subject to the explanation already given relating to the position of the overlying rock; whatever may be above and below such a sheet or ore body, may be regarded as walls or boundaries. But if the mineral is not continuous, upon the facts here shown, we must look to the matter of boundaries to ascertain whether the lode extends from one claim to another. There may be such interruptions in the course of an ore body as to lead to the inference that there can be no connection between the separate parts, although the "contact," as it has been called, may continue from one to the other. But if you find from the evidence that there is a body of ore in plaintiffs' ground, near to their east line, and there are other bodies of ore in defendants' ground, and that there are well-defined boundaries to both and all which are the same as to both and all, and such boundaries extend from one to the other, you ought to find that they are parts of the same lode;

so that if the mineral is not continuous from one claim to the other, the question turns upon the matter of boundaries, and that is to be decided by the preponderance of testimony,—not the number of witnesses merely, but upon what you may regard as the weight of testimony, after giving due credit to each and all. These are the important questions. There is another that was referred to in the course of the argument. It is also mentioned in this instruction, but I have not commented on it,—as to the position of the top or apex of this lode. I have not heard any evidence which is sufficient to establish the fact that it lies below this claim,—to the west of it. You will remember that it was contended on the part of the defendants,—that as to this portion of the lode, if there is any within this ground,— that as to this portion which extends into the Little Giant ground, that it has its top or apex in the Aetna location, which is immediately west of the Carbonate location, and upon that hypothesis, that it would be owned by the Aetna people; that there was a lode beginning in their ground, having its top there, and extending clear across the Carbonate claim, and into the Little Giant claim. That would be a tenable position if there were evidence sufficient to establish the fact, but I do not regard the evidence of very great weight upon that point, and therefore I have not said much about it. But it is a question for your consideration, and if you find, as a matter of fact, that the top and apex of the lode, or such parts of it as are claimed by the plaintiffs against the defendants, that it lies in the Aetna ground and not in the Carbonate ground, but down to the west of the Carbonate claim, then, of course, the plaintiffs cannot recover in this action. Upon that theory or hypothesis the lode would belong to the Aetna people and not to the plaintiffs in this case.

The matter in controversy here relates only to that portion of the Carbonate claim or the Carbonate lode, if you find there is one, which extends from the northwest down as far as the Shamrock location. The evidence that was given in respect to all the working below that point, or southward from that point, is only to show the character of the deposit—to show what it was generally, and how it was found in all that territory. It is sufficient to say, if you find the issue for the plaintiffs, that they are the owners in fee so far as the claims adjoin each other. As to the question of damages, if you find for the plaintiffs, there is some evidence here tending to show that a certain amount of ore was taken from the ground, that is, from the territory covered by the Little Giant location. If you find for the plaintiffs, they are entitled to the value of that ore, whatever it may be. You will, perhaps, remember better than I, the testimony. I believe there is some evidence to show that some-

thing like $2,000 was taken out, or something of that kind. I do not think of anything more that may be necessary to say to you, gentlemen, except that the burden of proof is upon the plaintiffs,—that it rests with them, as they are holding the affirmative in this action, to show by a preponderance of testimony every fact which is necessary to support a finding in their favor; that is to say, that there is a lode in their ground, and that it has the top or apex of it, and that it extends in well-defined boundaries from their territory into that of the defendants. It is upon them to prove it by a preponderance of evidence. If you find the testimony to be evenly balanced, your verdict will be for the defendants; if there is a preponderance of testimony for the plaintiffs, it will be for the plaintiffs, of course.

[See Iron Silver Min. Co. v. Murphy, 3 Fed. 368.]