[Sac. No. 1726. In Bank.—January 11, 1911.]

## H. A. HARPER, Respondent, v. SEYMOUR HILL et al., Appellants.

MINING CLAIM—BOUNDARIES—POSITION OF APEX—GOOD FAITH OF LO-CATION.—Under section 2320 et seq. of the United States Revised Statutes, the surface location and boundaries of a quartz mining claim located upon public lands of the United States are to be determined by the position of the apex of the vein as it is ascertained and marked on the ground, in good faith, at the time the claim is originally located and marked, and not by the real position of such apex as it may be subsequently proven to be in a trial with an adjoining claimant.

ID.—RIGHT OF POSSESSION OF CLAIM—GRANT IN PRÆSENTI.—The grant, under such sections, of the exclusive right of possession and enjoyment of the ground included within the lines of the location is a present grant, which takes effect as soon as the location is legally made. It refers to the lines as then established and gives the right to the ground inclosed thereby.

ID.—WIDTH OF CLAIM—MIDDLE OF VEIN—CONSTRUCTION OF STATUTES.—The requirement of section 2320, that "no claim shall extend more than three hundred feet on each side of the middle of the vein at the surface," although if taken strictly and literally it might seem to refer to the actual position of the apex, rather than to the place marked as such by the locator, is controlled to the contrary by other provisions of the statutes, and refers to the vein as honestly marked by the claimant at the time of the location as the center of the claim of which he then takes possession.

ID. — MARKED BOUNDARIES CONCLUSIVE EXCEPT AS AGAINST UNITED STATES.—Although the location, as made, may not be binding on the United States, and in making a survey for a patent the surveyor-general may ascertain and locate the true line of the apex to fix the boundaries, nevertheless in the mean time, and as against all others, the locator who has in good faith made the discovery and marked

the boundaries with regard to the position of the apex as he then finds and believes it to be, is protected in the possession of the surface thus ascertained, and the monuments he then sets control the location of the claim.

Id.—VALIDITY OF LOCATION—DISCOVERY OF VALUABLE MINERALS.—Mere testimony that there were seams of mineral upon a claim, without a statement of what such mineral consisted, is not sufficient evidence of a discovery of valuable minerals within the lines of the claim to uphold the validity of its location.

Id.—FINDING AGAINST VALIDITY—FAILURE TO MARK BOUNDARIES. — A finding against the validity of an alleged quartz-mining location will be upheld when the evidence fails to establish a discovery of valuable mineral within the location boundaries, or shows a failure to mark the boundaries upon the ground by any monuments, or at all.

Id.—PLEADING—FORFEITURE FOR FAILURE TO DO ASSESSMENT WORK.— Where the defendant, in an action to recover the possession of a mining claim, asserted a right of possession under a location of another claim that was not mentioned in the pleading of either party, the plaintiff may, without pleading the fact, offer evidence showing the forfeiture of such other claim by reason of the failure of the defendant to do the annual assessment work.

Id.—ESTOPPEL MUST BE PLEADED.—In such action, if the defendant relies upon an estoppel *in pais* as a defense, the facts constituting the estoppel must be specially pleaded.

APPEAL from a judgment of the Superior Court of El Dorado County and from an order refusing a new trial. N. D. Arnot, Judge.

The facts are stated in the opinion of the court.

W. J. McGee, Wm. E. Colby, and George H. Thompson, for Appellants.

Charles A. Swisler, for Respondent.

SHAW, J.—The defendants have appealed from the judgment and also from an order denying their motion for a new trial.

The plaintiff sued to recover possession of a mining claim known as the "Santa Ynez Gold Mine." The principal controversy is in regard to the respective rights of the plaintiff and defendants to the southerly part of said Santa Ynez claim which overlaps the northerly part of a mining claim located by the defendants known as the "Lookout Quartz Claim." The

defendants also claim practically the whole of the surface of the Santa Ynez Gold Mine by virtue of a certain alleged mining location known as the "Mountain View Quartz Claim." These claims of defendants were asserted in a cross-complaint. It is also claimed that defendants had a right to the ground under a location in 1896 of a claim called the "Success" mine. The court found that the locations of the Mountain View Quartz Claim and the Success claim were invalid and that the plaintiff was entitled to the ground within the Santa Ynez Gold Mine which overlapped the Lookout Quartz Claim, and gave judgment accordingly. All the claims in question were located upon public lands of the United States.

We will first consider the respective rights to the ground within the overlapping limits of the Lookout and Santa Ynez claims. The Lookout claim was located and marked on the ground in 1889 by the defendants, and ever since that time they have claimed possession of it and have done the work required by law. The Santa Ynez was located and marked by the plaintiff on September 21, 1904. His claim of right to include in it a part of the ground covered by the Lookout claim is based on the theory that the southerly line of the latter is situated more than 300 feet from the actual line of the apex of the Lookout lode or vein. The facts appear to be that in 1889, when the defendants made the original discovery and location of the Lookout mine, they put monuments at each end of the claim at the place where they then believed the apex of the vein to be. Corners were marked at each end at a distance of 300 feet from the end center monuments so placed, thus marking a claim 1500 feet long and 600 feet wide, as the law provides and allows. At the trial evidence was introduced tending, as it is claimed, to prove that the monument so placed at the center of the east end of the claim, had not been placed on the apex of the Lookout vein, but was located some 23 feet south of said apex. The findings describe, as the true line of the apex, a line running from the east line westerly through the claim. This line at its easterly end lies northerly of the line indicated as such by the original center end monuments. The court below was of the opinion that the actual line of the apex as disclosed by the evidence at the trial should control the boundaries of the claim; that the defendants had the right to only 300 feet south of that line on the surface, and that, as

the original southerly line was located more than that distance from the true line of the apex of the vein, such original line must be drawn in and the excess given to the plaintiff under his later location. The main question is whether the surface location and boundaries of a mining claim are to be determined by the position of the apex of the vein as it is ascertained and marked on the ground, in good faith, at the time the claim is originally located and marked, or by the real position of such apex, as it may be subsequently proven to be, in a trial with an adjoining claimant.

Section 2320 of the United States Revised Statutes [U. S. Comp. Stats. 1901, p. 1424], so far as material to the question, is as follows:—

"A mining-claim located after the tenth day of May eighteen hundred and seventy-two, whether located by one or more persons, may equal, but shall not exceed, one thousand five hundred feet in length along the vein or lode; but no location of a mining-claim shall be made until the discovery of the vein or lode within the limits of the vein located. No claim shall extend more than three hundred feet on each side of the middle of the vein at the surface. . . . The end-lines of each claim shall be parallel to each other." Section 2322 [U. S. Comp. Stats. 1901, p. 1425] provides that the locators of a mining location "on any mineral vein, lode, or ledge," on the public domain, so long as they comply with the laws of the United States and local regulations consistent therewith, "shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically" although, below the apex, such veins, lodes or ledges may diverge beyond the side-line planes, but not where they go outside the end-line planes. Section 2324 [U. S. Comp. Stats. 1901, p. 1426] provides that "the location must be distinctly marked on the ground so that the boundaries can be readily traced," and that all records of mining claims shall contain "the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." Sections 2325 and 2326 [U. S. Comp. Stats. 1901, pp. 1429, 1430] provide, in substance, that the owner of such mining location may

obtain a patent from the United States therefor by procuring the surveyor-general to survey and plat the same, filing an application in the proper land-office, and giving notice as directed. It is declared in section 2325 that "a patent for *any land claimed and located* for valuable deposits may be obtained"; that any person "having *claimed and located a piece of land*" may file application for a patent therefor.

The grant of the exclusive right of possession and enjoyment of the ground included within the lines of the location is a present grant which takes effect as soon as the location is legally made. It refers to the lines as then established and gives the right to the ground inclosed thereby. The necessary implication of the language is that the "surface included within the lines of their locations" which they have an immediate right to possess and enjoy, is the surface as then "distinctly marked on the ground." The statement that "no claim shall extend more than three hundred feet on each side of the middle of the vein at the surface," if taken strictly and literally might seem to refer to the actual position of the apex, rather than to the place marked as such by the locator. But the other provisions require a different interpretation. The reference is to the vein as honestly marked by the claimant, at the time, as the center of the claim of which he then takes possession. There are also practical reasons which forbid such literal construction. Lodes or veins frequently do not appear upon the surface except at intervals. Sometimes they may not appear at all. The true apex or middle of the vein may not be accurately determinable except by extensive excavations. The eastern end of the vein of the Lookout mine was covered with soil at the time of the location. Its true position was only disclosed by subsequent excavations, and it is still in dispute. Such veins do not run in straight lines throughout their courses, but with many turns and angles. Detached masses projecting above the surface may be mistaken for the ledge or vein. The ore may occur in a blanket formation having no distinct apex. If the construction contended for should prevail, a mining location which the law declares shall secure an immediate right of possession to the surface within the marked lines, would often be a mere float, a tentative location, to be changed and adjusted from time to time to the actual location of the vein, at the instance of adjoining claimants, as subsequent developments

may indicate. It would not become fixed and permanent as against third persons, until the patent was issued. That the location, as made, may not be binding on the United States, and that in making the survey for a patent the surveyor-general may ascertain and locate the true line of the apex to fix the boundaries, may be conceded. (See *Howeth* v. *Sullenger*, 113 Cal. 551, [45 Pac. 841].) But it is the clear intent of the statute that in the mean time, and as against all others, the locator who has in good faith made the discovery and marked the boundaries with regard to the position of the apex as he then finds and believes it to be, shall be protected in the possession of the surface thus ascertained, and that the monuments he then sets shall control the location of the claim. Any other interpretation would produce great confusion and uncertainty and invite disputes and litigation. The object of the enactment of the statute, which evidently was to give certainty of location and security of titles to mining claims and prevent litigation over them, would be defeated.

Substantially the same effect was given to the statute by the supreme court of Nevada in *Golden Fleece Co.* v. *Cable Con. Co.,* 12 Nev. 329, and *Gleeson* v. *Martin White M. Co.,* 13 Nev. 456, Chief Justice Beatty, then of the supreme court of Nevada, writing the opinion. In the Golden Fleece case the plaintiff, after locating its claim according to what it then took to be the line of the vein, discovered that the actual course of the vein was at right angles to the line located. It then undertook to swing its claim around to correspond with the true line of the vein. Others had in the mean time located the adjoining ground and they objected to the change. After showing that under the rules of miners prior to the enactment of the statute of 1872 a claim was located by marking upon the vein alone, and that the vein was then the sole criterion of location, the court discusses the change made by that statute, saying: "Under that law (of 1872) it cannot be doubted that it (plaintiff) is bound by the lines of its surface claim in favor of a subsequent locator. It is true that the vein is the principal thing and the surface but an incident thereto; but it is also true that the mining law has provided no means of locating a vein except by defining a surface claim, including the croppings or point at which the vein is exposed, and the part of the vein located is determined by reference to the lines of the

surface claim. These lines are fixed by the monuments on the ground, and they cannot be changed so as to interfere with other claims subsequently located." Referring then to the part of the statute relating to the records required by local rules, the opinion proceeds: "The requirements of the law as to what the record shall show are evidently designed to fix the *locus* of the claim, in order to prevent floating. But the monuments defining the claim on the ground answer this purpose better than the record, and if they are to be erected in the beginning there can be but little use ever to make a record; and in fact it is not made obligatory by law. . . . All that is decided upon this point is that under the law of Congress, unaided by any supplementary miners' rules, there is no means of locating a quartz vein except by marking out surface lines, and that when these lines have been marked they cannot be changed so as to take in ground that has been located by others prior to such attempted change."

In the Gleeson case this language is approved and the court further says: "The vein is the principal thing in the sense that it is for the sake of the vein that the location is made; the surface is of no value without it; no location can be made until a vein has been discovered within its limits, and the surface must, or at least ought to, be located in conformity with the course of the vein. (U. S. Rev. Stats. 2320, [U. S. Comp. Stats. 1901, p. 1424].) But the location is of a piece of land including the vein. . . . This section alone shows that it is a surface parallelogram not less than 50 feet in width that must be located. But the purpose of the law is more clearly indicated by the granting clause. . . . The vein originally discovered, and for the sake of which the location is made, is lumped in with other mineral deposits that may happen to exist within the limits of the surface claim, and no part of it is granted except that part the top or apex of which lies inside the surface lines extended downward vertically. This, it would seem, ought to be conclusive, but the language of section 2325 [U. S. Comp. Stats. 1901, p. 1429] is, if possible, still more convincing: 'A patent for *any land* claimed and located for valuable deposits may be obtained in the following manner: Any person, association, or corporation authorized to locate a claim under this chapter, having claimed and located *a piece of land* for such purposes,' may by taking the prescribed steps obtain the

title upon payment of five dollars per acre for the land. Thus it appears that a location must be made by taking up *'a piece of land'* to include it. No other means are provided." As to the object and policy of the statute the court says: "Before the statute he could claim no more than 400 feet of the vein, and of that he was not secure for a day. The moment he developed rich ore he was beset by trespassers, and in order to enjoin them from stealing his property, was obliged to trace the vein between them and the location point. He was harassed with litigation, and his means often entirely consumed in the prosecution of work not necessary to the development of his mine, but essential for the vindication of his title. Under the new law this source of vexation and expense is entirely swept away. Within his surface lines the discoverer of a vein is secure. . . . Sound policy, therefore, concurs with the language of the statute in sustaining our conclusion that a vein can only be located by means of a surface claim. . . . The object of the law in requiring the location to be marked on the ground is to fix the claim, to prevent floating or swinging, so that those who in good faith are looking for unoccupied ground in the vicinity of previous locations may be enabled to ascertain exactly what has been appropriated in order to make their locations upon the residue."

These observations were made with reference to the rights of subsequent locators of adjoining ground against changes in the lines attempted by the first locators. But the point of the decision is that the rights of the parties are fixed by the lines marked on the ground when the location is made. If the lines so fixed protect subsequent locators against changes afterwards sought to be made by the first locator, they must be equally potent to protect the first locator against changes sought to be made against his interest by subsequent locators. The general principle that the location as made on the ground controls the rights of the parties is stated in the following cases: *Iron S. M. Co.* v. *Elgin etc. Co.*, 118 U. S. 207, [6 Sup. Ct. 1177, 30 L. Ed. 98] ; *Watervale M. Co.* v. *Leach*, 4 Ariz. 34, [33 Pac. 420]; *Wyoming Co.* v. *Champion Co.*, 63 Fed. 548; *Mining Co.* v. *Torbet*, 98 U. S. 468, [25 L. Ed. 253], and *Leadville Co.* v. *Fitzgerald*, 15 Fed. Cas. 101, No. 8158.

There are many cases which establish the doctrine that where the locator has marked his corners so that the side-lines lie

more than 300 feet from the apex of the vein as located by him at the time, or otherwise marks a claim larger than the limits allowed by the statute, he cannot, as against a subsequent locator of adjoining ground, claim the excess, and that a court may adjudge that his side-lines shall be "drawn in" to a position not more than 300 feet from the general course of the center line. (*McElligott* v. *Krogh,* 151 Cal. 132, [90 Pac. 823] ; *Howeth* v. *Sullenger,* 113 Cal. 551, [45 Pac. 841] ; *Southern Cal. R. Co.* v. *O'Donnell,* 3 Cal. App. 386, [85 Pac. 932] ; *Thompson* v. *Spray,* 72 Cal. 533, [14 Pac. 182] ; *English* v. *Johnson,* 17 Cal. 118, [76 Am. Dec. 574] ; *Hansen* v. *Fletcher,* 10 Utah, 266, [37 Pac. 480] ; *Richmond* v. *Rose,* 114 U. S. 576, [5 Sup. Ct. 1055, 29 L. Ed. 273].) These and other cases to the same effect are cited by the plaintiff in support of the proposition that the side-lines will be drawn in when the court, upon evidence taken and in the light of developments subsequent to the original location, ascertains that the locator mistook the actual location of the vein where it does not show upon the surface, and that the mining claim is always subject to change of position if new evidence or discoveries demonstrate that the vein is situated elsewhere than in the position it was supposed to occupy. None of them supports the proposition. In each the court assumed that by some mistake the side-line or corner had been originally located too far from the place located as the apex of the vein, and the question involved and decided was the effect of such a mistake in measuring from the center stake or monument. For example, in *McElligott* v. *Krogh,* although it is not expressly so stated in the opinion, the fact was, as the record on file shows, that the court found that the true line of the vein and the line thereof as originally located were substantiallly identical. The question of the effect of a difference in position between the actual place of the apex and the original monuments set to locate it, was not presented, and nothing said in the opinion can be taken as an expression of an opinion upon that question.

Of course, we do not here consider the effect of a fraudulent or intentional mislocation of the vein. The evidence shows that at the eastern end the vein did not appear upon the surface and that the defendants erected the center monument at that end of the Lookout claim in good faith at the point where they believed the vein extended across the end-line

thereof. Upon the facts found and shown by the undisputed evidence the court erred in giving to the plaintiff the ground included within the original limits of the Lookout location and embraced in the overlap of the Santa Ynez claim.

We have assumed that the evidence is sufficient to show that the vein is situated off the located line as the findings declare. The appellants earnestly contend that the findings are without support in this particular. Our conclusion that the original monuments control, makes it unnecessary to consider this question of the sufficiency of the evidence.

The findings that the Mountain View and Success locations were invalid are sustained by the evidence. The record does not set forth any substantial evidence of a discovery of valuable mineral within the lines of the claims. The defendants testified that there were seams of *mineral* upon the claims, but they did not state of what such mineral consisted. That term is too vague and general to justify this court in reversing a finding upon the theory that the witnesses intended to declare that the mineral in question was valuable and of a character that would support a mining location under the laws of the United States. A discovery of valuable mineral within the located boundaries is an essential prerequisite to a valid mineral location upon public lands of the United States. In addition to this defect, there was evidence that the boundaries of these claims were not marked upon the ground by any monuments, or at all. As to the Success mine, there was no evidence that any work was done upon the claim after the years 1897 and 1898. Under some circumstances it would be necessary to plead the forfeiture to take advantage of such failure. But here the claim under the Success location was not mentioned in the pleadings of either party. Evidence concerning it, if admissible at all, was so only under the general issue upon the allegation of right and title. In this condition of the pleadings, evidence showing the forfeiture was admissible on behalf of the plaintiff, without express plea. (*Blood* v. *La Serena etc. Co.*, 113 Cal. 229, [41 Pac. 1017, 45 Pac. 252].)

It is further claimed that plaintiff made a binding agreement in parol with the defendants, whereby he is estopped to claim against them more than a one-third interest in that part of the Santa Ynez claim not included in the Lookout overlap.

He never executed any written agreement to that effect. This contention of the defendants is based entirely upon a supposed estoppel by conduct. The question is not presented by the record and cannot be considered. The pleadings make no allusion to it whatever, and there is no finding upon it. It is a well-established rule that if a defendant relies on an estoppel *in pais* as a defense to the plaintiff's action, the facts constituting the estoppel must be speciallly pleaded. (*Di Nola* v. *Allison,* 143 Cal. 115, [101 Am. St. Rep. 84, 65 L. R. A. 419, 76 Pac. 976]; *Newhall* v. *Hatch,* 134 Cal. 273, [55 L. R. A. 673, 66 Pac. 266]; *Etcheborne* v. *Auzerais,* 45 Cal. 121; *Davis* v. *Davis,* 26 Cal. 39, [85 Am. Dec. 157].) We are not to be understood as intimating that the facts claimed to exist would have constituted such estoppel, even if they had been properly pleaded.

The judgment and order are reversed.

Angellotti, J., Sloss, J., Lorigan, J., and Melvin, J., concurred.