## KAY JEWELRY CO. v. GRUEN NATIONAL WATCH CASE CO.

### No. 5452.

Circuit Court of Appeals, Sixth Circuit.

May 13, 1930.

George F. Scull, of New York City (Schanfarber & Schanfarber, of Columbus, Ohio, and Charles W. Mortimer, of New York City, on the brief), for appellant.

H. A. Toulmin, Jr., of Dayton, Ohio (H. A. Toulmin and Francis W. Gruen, both of Dayton, Ohio, on the brief), for appellee.

Before DENISON, MACK, and HICKS, Circuit Judges.

MACK, Circuit Judge.

Appeal from a decree permanently enjoining defendant, a retail jeweler, from making, using, or selling watches containing cases manufactured according to United States patent No. 1,573,134, for improvements in "Watchcase and Process for Making Same," granted to plaintiff on February 16, 1926, on the application of Carl W. Bieser. The decree further ordered an accounting of profits and damages. Both claims of the Bieser patent were held valid and infringed; the court further found specially that the suit was defended by the Bulova Watch Case Company of New York City. As infringement is admitted, we need consider only the question of the validity of the claims.

When wrist watches first came into vogue, the cases were designed in a variety of ways to provide means for attaching the wrist strap which, at that time, was usually made in one piece. A common form consisted of parallel slots cut through the flange of the case so that the continuous ribbon or strap passed between the back of the case and the wrist of the wearer. In another form, wire loops were soldered to the case and bent downward to receive the strap or ribbon. Later it became the style to have the strap or ribbon discontinuous at the watch. To provide a suitable connection for the ends of this two-piece strap or ribbon similar wire loops were used with their ends soldered to the respective sides of the case. This form, however, though still in use, was objectionable because the fixed nature of the strap bar made it difficult to remove a worn ribbon or strap and to attach a new one.

To remedy this difficulty, some watchmaker, before the application for the patent in suit, devised a form of removable strap bar. In this, the strap bar was provided at either end with a movable pin, kept in place by a spring. The pins extended into sockets drilled into lugs rigidly attached to the case. By pressing these movable pins inward, the entire strap bar could be removed from its lugs and slipped out of the loop in the end of the worn strap and into the loop of a new strap, which could then be snapped into place between the watchcase lugs. The new arrangement, however, necessitated reasonably large and substantial lugs on the watchcase so that holes might be drilled into them to receive the movable pins on the ends of the wrist strap bar. The general practice was to make these lugs as separate pieces and to solder them to the watchcase. This required the stamping of separate lugs which had to be drilled before attachment; frequently it was necessary to use small rivets which were fitted into holes in the bezel (i. e., case front in which the crystal is inserted) or back, and were swaged therein. Moreover, if filled metals were used, it was necessary to make the lugs of solid metal, thereby increasing the cost; even then, solder seams were sometimes visible.

The application for the patent in suit, filed April 10, 1923, was predicated upon this previous, unpatented device of removable lugs, and stated that its objects were "to provide a watch bezel and back wherein the soldering heretofore necessary for securing lugs thereon for mounting of wrist straps and the like, is eliminated"; "to provide a watch bezel having lugs for receiving strap bars, the lugs being formed integral with the back or bezel"; and "to provide a simple, expeditious, and efficient process for forming lugs and watch cases in a single integral structure." The method claims were immediately rejected by the Patent Office, and, after repeated revisions and rejections, were canceled by Bieser, the patentee. The product claims were prosecuted and revised to meet successive rejections, and were finally allowed as follows:

"1. As a new article of manufacture a sheet metal watch case stamping comprising a base and peripheral flanges extending from

the base and integral lugs formed at the periphery, connecting the flanges and lying wholly outwardly beyond one pair of opposing flanges.

"2. As a new article of manufacture a sheet metal wrist watch case stamping comprising a base and peripheral flanges extending perpendicular from the base, and lugs connecting adjacent flanges and having opposed parallel faces, one of said parallel faces of each lug being aligned with one face of an adjacent peripheral flange, the lugs being disposed in pairs at opposite ends of the case and each pair adapted to receive a mounting for wrist straps."

The bezel or back described in these claims is made by stamping a single piece of metal into the desired shape by means of dies having recesses and projections so arranged that the lugs and case are formed at the same time and by the same operation. Where filled metal is used for the case, solid metal is no longer required for the lugs, soldering becomes unnecessary, and, it is alleged, a saving of $1.32 per case, or 24 per cent., is effected. A set of dies, however, is very expensive; that used by plaintiff cost $2,500. Consequently the manufacture of the lugs integral with the case is economically practicable only if a large run of one style is assured.

The validity of the patent was assailed on the grounds of lack of invention and prior use. As to the former, which is the only defense we need consider, defendant asserts that no invention was shown in making integral parts which were formerly made in two pieces and mechanically attached; that watchcases with integral projections were known to the prior watchcase art; and that, in the sheet metal art, alleged to be analogous, the use of integral lugs or projections, stamped in the initial operation, was likewise well known. Plaintiff contends that the alleged invention did not consist merely in making integral what was formerly made separately and attached, but that the Bieser patent disclosed a watchcase embodying a new construction which possessed marked structural advantages and at the same time permitted a great saving of precious metals.

1. The patent in suit presents the typical case, difficult in its simplicity, in which a court must determine whether the specifications and claims set forth a distinct advance over the prior art or merely formulate a mechanical adaptation which might have been made by any one skilled in the particular field. But, before considering this question, it is necessary for us to ascertain just what were the precise disclosures of the Bieser patent.

Plaintiff insists that Bieser's basic problem was to provide a construction that would be strong enough, if solid lugs were eliminated, to support the watch and straps. It is argued that his task was not only to make the lugs integral with the case, but to arrange the parts so as to increase the strength, retain a suitable appearance, and secure resistance to strains when hollow, thin metal shells were substituted for solid lugs. The contention is that these objects were secured by a system of bracing whereby the side walls of the case were made in alignment with the walls of the lugs, and the inside walls of the latter were formed parallel to the outside walls and at right angles to the vertical end walls of the casing. These end walls were located between the inside lug walls so as to brace them. In addition, since the whole was stamped in one piece, the bottom of the case continues out as the bottoms of the lugs, a necessary result which, it is claimed, lent strength to the finished case.

The difficulty with this theory is that it appears to emanate entirely from counsel, and can nowhere be found in either the specifications or claims of the patent. The specifications were directed chiefly to a description of the method of manufacture, which Bieser sought to patent but was forced to abandon; after stating the objects of his invention, above quoted, and describing the method of manufacture, the patentee concluded:

"The casings made as disclosed herein are lighter in weight than would be the case if solid lugs were soldered upon the casing, and besides a great saving of valuable metal is accomplished. Further, this method eliminates the line of soldering that is noticeable at the place of mounting of soldered lugs upon the cases; especially is this noticeable when white gold is used. Also tremendous savings of time and labor are accomplished."

It is clear from this statement and likewise apparent from an examination of the file wrapper that Bieser was interested primarily in the specified process, and advantages incident thereto, rather than in the design or structural benefits of any of the bezels or back which might be manufactured. Moreover, there is not a word in Bieser's own testimony in the case as to these alleged structural advantages. Evidently they were not apparent to him. Nowhere in the record is there any evidence as to the necessity for bracing the case against particular stress on the lugs. The respective arrangement of

parts seems to be merely the necessary result of making the lugs integral with the case in a single stamping operation.

2. Bieser's contribution, then, consisted in making integral the case and lugs which had theretofore been made separately. He accomplished this by the use of complementary dies; and, in addition to a marked saving in precious metals, the improved cases could be made more quickly and with a considerable saving in labor. Merely making in one piece a device previously made in parts, which were soldered or otherwise attached, does not usually involve invention. Howard v. Detroit Stove Works, 150 U. S. 164, 14 S. Ct. 68, 37 L. Ed. 1039; Consolidated Electric Mfg. Co. v. Holtzer, 67 F. 907 (C. C. A. 1st); Standard Caster & Wheel Co. v. Caster Socket Co., 113 F. 162 (C. C. A. 6th). The simplicity of such an improvement, however, does not bar invention (The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154), and the consolidation of parts may constitute a patentable advance. Krementz v. S. Cottle Co., 148 U. S. 556, 13 S. Ct. 719, 37 L. Ed. 558. The question turns upon the facts of each case, and, while the decisions usually hold such patents invalid, "the exception to the general rule must depend upon special facts indicating the presence of the inventive faculty in a degree greater than the mere mechanical knowledge exhibited by so simple an improvement." Standard Caster & Wheel Co. v. Caster Socket Co., 113 F. 162, 166 (C. C. A. 6th), and cases cited.

3. We are of the opinion that there is nothing in the present case to show more than the application of mechanical skill to devices shown in the active prior art. Unlike Krementz v. S. Cottle Co., supra, upon which plaintiff strongly relies, there was no long-felt need for the one-piece bezel and lugs. The sliding pin method of fastening the wrist strap did not come into general use until shortly before the patent was issued. Moreover, there was little or no occasion for any manufacturer to develop the single operation and integral lug form until a particular style achieved considerable popularity, at least enough to warrant the comparatively large investment in a set of dies; indeed, it appears that, in the manufacture of ladies' watches, the soldering method is still in use, owing to the ephemeral nature of case styles in that line. Accordingly, the weight usually given to the fact that a very simple device was not readily conceived in a rapidly developing art, another feature of the Krementz Case, cannot, in our judgment, be attributed to the Bieser patent.

4. Turning to the prior art, we find two classes: The watch case, and the analogous sheet metal art. The former is replete with patents showing a clear understanding that stamping an ornamental or functional projection exterior to the case, by a single operation, was a means of avoiding the difficulties attendant on soldering. United States patent No. 362,615, issued May 10, 1887, and No. 457,147, issued August 4, 1891, both to Ecaubert, show integral ornamental rims or projections. The specifications of the latter state (page 1, lines 19–30):

"These projections have been soldered onto the lids or cases; but they are objectionable, because they are liable to break off, and also because the line of solder necessarily occupies a position where it is noticeable * * * My present invention relates to improvements by which the lid or case *with the box-shaped projections thereon are formed in one piece,* without soldering, to attach the parts together, and with the visible portions of the case composed of the plated or polished surface of the metallic sheet."

Neither of these Ecaubert patents was cited by the Patent Examiner, and, despite plaintiff's insistence that they do not relate to wrist watches, which at the time were not in fashion, they do show a knowledge in the art that a projection theretofore soldered on might be stamped in by the use of dies. United States patent No. 1,050,221, issued January 14, 1913, to Matalene, shows a flat lug integrally attached to the center plate of a three-piece wrist watch case. Similarly, United States patent No. 130,603, issued August 20, 1872, to Thiery, and Swiss patent No. 48119, issued July 15, 1909, to Amez-Droz, show integral projections—in the former for hinge-bearers, previously soldered; in the latter, for carrying flanges for the strap of a wrist watch. These last three patents, among others, were cited by the Patent Office, and the claims, as amended to meet them, were thought to be an advance; but with this conclusion we cannot agree. The District Court disregarded this prior watch-case art because it did not purport to deal with wrist watch lugs and the projections served no functional purpose. But wrist watch lugs, even in the improved sliding pin form, are not part of Bieser's patent; and, if we were of the opinion that the center lug of Matalene or the flange of Thiery were purely ornamental and not functional (and the line is difficult to draw), the question would still remain whether or not invention is involved in stamping out of a single piece of metal a projection on a watchcase, orna-

mental or functional, theretofore soldered on. These watchcase patents, in our judgment, furnish the negative answer.

The sheet metal working patents, which we need not set out in detail, reinforce the conclusion that the Bieser patent is invalid for want of invention. Such analogous, and often nonanalogous, art is relevant on the issue of validity. Carroll-Thomson Co. v. Central Brass & Fixture Co., 22 F.(2d) 253 (C. C. A. 6th). It formed the basis for the Examiner's rejection of Bieser's process claims. While the problems may have been slightly different in the watch art, which dealt with soft, precious metals, these sheet metal working patents indicated at least a generally known mechanical principle that, in working with malleable metals, almost any kind of projection or shape, theretofore soldered, could be stamped or rolled.

5. Plaintiff contends, however, that the ready commercial success of the new case model and the widespread adoption of the device by competitors is evidence of validity. It further offers various consent decrees against competitors, some of whom testified in the present case. While commercial success often has an important bearing on the question of invention, it is of course far from conclusive. See Dilg v. George Borgfeldt & Co. (C. C. A.) 189 F. 588, 591; Dubilier Condenser & Radio Corp. v. Areovox Wireless Corp. (C. C. A. 2) 37 F.(2d) 657, decided January 13, 1930. As heretofore stated, the production of integral lugs in a single stamping was practicable only when the market needs warranted the large investment in dies. The demand for this style of case was created by the introduction of the sliding pin attachment, which Bieser did not invent. In these circumstances, it cannot be said that the commercial success was due to the patent disclosures.

Moreover, the consent decrees are not convincing. The three defendants were apparently small companies; the decrees were entered in the same District Court in this circuit, subsequent to and pending this appeal. As pointed out in John E. Thropp's Sons Co. v. Seiberling, 264 U. S. 320, 329, 330, 44 S. Ct. 346, 68 L. Ed. 708, the purchase of peace, when it is known that the patentee or assignee will have to proceed against a large competitor, is often a wise course for the small manufacturer. We cannot, therefore, predicate validity of the Bieser patent upon mere commercial success or acquiescence by part of the trade. See Harvey Hubbell v. General Electric Co. (C. C. A.) 267 F. 564;

Wire Wheel Corp. v. C. T. Silver, Inc. (D. C.) 266 F. 221, 229; Dubilier Radio Co. v. Areovox Wireless Corp., supra.

Holding the Bieser patent void for want of invention, we need not consider the defense of prior use. Whether or not the suit was in fact defended by the Bulova Watch Company of New York City becomes likewise immaterial.

Reversed, with instructions to dismiss the bill for want of equity.